# Chenault et al. v. Southern Trust Company.

(Decided May 13, 1932.)

(As Extended on Denial of Rehearing Nov. 4, 1932.)

E. S. WIGGINS and S. D. PARRISH for appellants.

BURNAM & GREENLEAF for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming.

In this action brought by appellee, the Southern Trust Company, to enforce payment of a note and to foreclose the mortgage securing it, after many transactions had been had, appellants C. F. Chenault, etc., filed an answer and counterclaim on June 9, 1928, pleading certain losses sustained, and also that the obligation sued on was usurious, and praying judgment therefor. The issues involved a long and complicated account, and the court referred the action to the commissioner to take the proof and report. A large amount of proof was taken; the commissioner reported against the counterclaim, and, on exceptions to his report, it was confirmed by the circuit court, and judgment was entered accordingly. The defendants appeal.

The defendants owned a valuable tract of land in Madison county. In the year 1924 the land was mortgaged for $28,000, and interest on the mortgage had accumulated to the amount of $1,253. The defendants needed other money and applied to Lewis Dunbar, a real estate agent in Richmond, who was doing business under the name of the Freeman Realty Company, to secure for them a loan on the farm of $37,000, and employed him for this purpose. Dunbar made a number of efforts to secure the loan and was unsuccessful. Finally he got into communication with the Southern Trust Company, a Louisville corporation, which has a

capital of $200,000, and follows the business of procuring other corporations to make loans on the land of others in Kentucky. In this way it had outstanding loans at this time of about $20,000,000. On August 18, 1924, the defendants applied to the Southern Trust Company to secure a loan on the land. In this application, among other things, are these words: ''For the service of said trust company in connection with said loan I agree to pay the said company a commission of 5% of the amount voted or agreed to be loaned. Same to be paid when said loan is closed.'' After receiving the application, the officer of the trust company went down to Richmond to look at the land and see Chenault. After this he took up the question of the loan with the Metropolitan Life Insurance Company, as his company did not make loans, but only secured them through other companies. The Metropolitan Life then sent its agent down with the trust company's agent to look at the land, and he recommended a loan of $34,000 on the land. The transaction was then closed, and the mortgage was executed on December 1, 1924, and was recorded on January 18, 1925. The trust company paid the money; sent the notes and mortgage to the life insurance company under the arrangement between them and it paid to the trust company the money it had paid to Chenault and for him. After paying the mortgages and interest there was a balance left of $4,747 of the loan, and this was paid to Mrs. Chenault. When the life insurance company would only lend $34,000 on the property, and Chenault needed all of this, the trust company agreed to take a note for the commission and a second mortgage to secure it. The trust company had nothing to do with the contract between Dunbar and Chenault. Dunbar claimed a commission of 2 per cent., amounting to $680. The trust company's commission of 5 per cent. on $34,000 was $1,700. It took the Chenault note for its commission and 2 per cent. of the amount of the loan alleged to be due to Dunbar for his services in procuring the loan. That note was for the full sum of $2,332, with annual payments running through a series of years and which included the claimed commission of Dunbar as well as that of the trust company. Before any of the installments became due the trust company paid Dunbar his incorporated commission therein and later filed this action seeking to recover the full amount of the note and to enforce its mortgage given to secure it, and the aforesaid de-

fenses were interposed thereto with the result that has been stated.

It is earnestly insisted that the charge of the trust company of 5 per cent. is improper, and that the note to this extent was without consideration and usurious. But it will be observed that by the contract the trust company was to get 5 per cent. commission. It was simply in the business of securing loans for people from other corporations, and there was nothing in the proof to show that there was any bad faith or effort to disguise the truth. It is well settled that such contracts are legal and not usurious. Webb v. Southern Trust Co., 227 Ky. 79, 11 S. W. (2d) 988; Ashland National Bank v. Conley, 231 Ky. 844, 22 S. W. (2d) 270. The counterclaim as to this alleged usury was properly dismissed. The same contention of usurious consideration is also made as to Dunbar's commission if it should be found that any was due him from Chenault, but which the latter denies in his evidence because, as he contends, the entire commission of both Dunbar and the trust company were included in the 5 per cent. promised to the latter, and he is sustained in that contention by Dunbar, but it was denied by the witnesses for the trust company, as well as contradicted by the note sued on, which it is admitted was for 7 per cent. of the loan.

But it is earnestly insisted that the failure of the court to credit Chenault with the amount of Dunbar's commission was erroneous because not sustained by the evidence, in that it proved that his commission was to come out of the 5 per cent. agreed to be paid to the trust company. But, whatever the condition of the evidence on that contention, the pleadings of Chenault are not sufficient to raise that issue and it cannot be investigated under a simple defense of usury. After the note was executed and before the suit was filed, Chenault got into communication again with Dunbar and arranged with him to have a public sale of a part of the land. He and Dunbar went up to Louisville to see the trust company and after this visit returned home and advertised the sale of the land. The sale was had and part of the land was sold for about $19,000. The proceeds of the sale was forwarded to the trust company, and it was requested to release the lien on this part of the land. It refused to do this, and thereupon the money and notes were placed in bank and

the parties went to the court. Finally Chenault borrowed $2,000 from another, and the lien was released and the sale went through. Chenault paid Dunbar $592 for this sale, and he claims he should recover of the trust company for the loss and expenses he incurred by its failure to release the lien on the land sold. But the proof for the trust company is that it did not agree to release the land absolutely, but only agreed to release it upon the payment of $21,000, and did release it in the end when the $21,000 was put up. On this question the evidence is conflicting, but the facts tend to sustain the testimony of the trust company, and the finding of the commissioner, approved by the circuit court, cannot be disturbed here.

The $2,000 that was borrowed, added to the proceeds of the sale of the land, exceeded $21,000 by $136.04, and the trust company wrote Chenault that this balance was in its hands and would be applied on notes thereafter due. Later it collected interest on one of the purchaser's notes, amounting to $74.95, and disclosed this fact in the action. The $135.04 had not been applied on a subsequent note and so it had in its hands $223.40, which it then paid into court. Appellants insist that the court erred in adjudging costs against them, when appellee had this money in its hands and owed them. But there was no controversy about this matter. The matters in controversy were all decided against appellants. The admitted credit was simply overlooked prior to the time it was disclosed. A court of equity has a judicial discretion in such settlements as to costs, and its discretion will not be controlled here, unless abused. Chiles v. Robinson, 224 Ky. 71, 5 S. W. (2d) 269.

Judgment affirmed.