## National Surety Corporation v. City of Bowling Green.

## City of Bowling Green v. Patterson et al.

(Decided June 19, 1936.)

RODES & HARLIN for National Surety Corporation.

J. FRANK DENTON for city of Bowling Green.

WHEELER, WHEELER & SHELBOURNE for A. Y. Patterson.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

These two appeals are prosecuted from a judgment of the Warren circuit court. The two cases were consolidated and heard on the same record. A. Y. Patterson was the duly elected tax collector of the city of Bowling Green from April, 1930, to April, 1934. During this period of time up to December, 1933, he served also as clerk of the waterworks department of the city and collected water rentals. He gave bonds to the city for the faithful performance of his duties both as collector of taxes and of water rents, with the appellee Fidelity & Casualty Company of New York as his surety. F. W. Blackwell was an assistant to Mr. Patterson up to December 1, 1933, at which time Mr. Patterson gave up his duties as collector of water rentals, and Blackwell was elected to that position in his stead. Blackwell thereupon gave bond to the city, with the appellant National Surety Corporation as his surety thereon. Water rentals were thereafter deposited in the Citizens National Bank at Bowling Green in the name of the "City of Bowling Green, F. W. Blackwell, Clerk of the Water Works Department."

In April, 1934, a deficit existed in the accounts of Mr. Patterson as tax collector. On April 27, 1934, Blackwell drew a check on the waterworks account, payable to the city treasurer, in the sum of $2,674.48. He delivered the check to the treasurer, and instructed him to apply it to the tax collector's account. This enabled Patterson to balance his account and to obtain his release from the city.

Within a month after this transaction took place, an audit disclosed a shortage in Blackwell's own accounts somewhat in excess of the check above mentioned, and he was immediately suspended from of-

fice. Thereafter his surety, without contest, paid the full amount of the deficit, with the exception of $2,-674.48, w h i c h it claimed w a s properly chargeable against Patterson and his surety, and not against itself.

The city of Bowling Green brought a suit against Blackwell and his surety and a separate suit against Patterson and his surety at the same time and for the same amount. On motion of the city, the two cases were consolidated, and on final hearing the trial court gave the city judgment against the appellant National Surety Corporation, and in the separate suit against the Fidelity & Casualty Company of New York he gave judgment for the defendant. The National Surety Corporation took an appeal from that judgment, and the city, in order fully to protect its rights in the premises, took an appeal from the judgment in favor of the Fidelity & Casualty Company of New York, with the result that we now have the entire matter before us. Clearly, one or the other of the sureties, both of whom are entirely innocent of any wrong, is liable to the city for the amount of the shortage.

The city treasurer testified that Blackwell represented to him, at the time when he delivered the check, that some of the tax money had become intermingled with the water rentals account and that he wished to straighten the matter out. The proof indicates, however, and the trial court found, that there was in fact no intermingling of the two funds. Indeed, the crux of the decision below was the fact that the check for $2,674.48 was a misappropriation of water rentals, which rendered Blackwell's surety liable to the city. In the opinion of the trial court it is said:

> "There was no intermingling of tax money with water works collections, and Blackwell directed the city treasurer to, and he did, apply this water works money to the general tax fund, and evidently Blackwell did this to cover up a previous shortage of his while working under the city tax collector and before he (Blackwell) was appointed water works clerk."

Plainly, there must have been a shortage in the tax collector's account, which was made good by the payment of the check drawn from the water rentals.

It necessarily follows that the appellee Fidelity & Casualty Company of New York was responsible to the city in the amount of this deficit at the time when the check was delivered by Blackwell to the treasurer.

It is argued, however, that the payment of the $2,674.48, from whatever source it may have been derived, with the agreement of the city, fully settled Patterson's accounts, and that the city, having applied the payment on the oldest debt, cannot now alter that application to the prejudice of Patterson's surety. There are several objections to this line of reasoning. In the first place, there is nothing to show that the surety on the bond of Mr. Patterson has in any way changed its position on the faith of the action of the city in improperly granting a quietus to Patterson. In the second place, the $2,674.48 check was drawn against the very funds for which the bond of the National Surety Corporation was security, and in which, therefore, it had an equity which the city was bound to recognize in the application of payments. 50 C. J. 106; 21 R. C. L. 1128; Bross v. McNicholas, 66 Or. 42, 133 P. 782; Ann. Cas. 1915 B, 1272; United States v. American Bonding & Trust Co. (C. C. A.) 89 F. 925; Columbia Digger Co. v. Rector (D. C.) 215 F. 618; Merchants' Ins. Co. v. Herber, 68 Minn. 420, 71 N. W. 624. With the last case cited, read the discussion of it in Standard Oil Co. v. Day, 161 Minn. 281, 201 N. W. 410, 41 A. L. R. 1291.

Under the ordinances of the city of Bowling Green, it is made the duty of the city treasurer to receive all money belonging to the city. It is likewise made the duty of the waterworks clerk, after collecting water rentals, to deliver them as soon as possible to the treasurer. Since the $2,674.48 was actually turned over to the city treasurer, it is clear that the waterworks clerk has complied with the letter of his bond to the extent that it required that he account to the city for funds collected. It may be true that the transaction was a misappropriation of water rentals, in view of the fact that the treasurer applied the payment to the wrong account because of the fraudulent direction of the clerk. It may also be true that the surety on Blackwell's bond would still be responsible to the city if it is shown that the city has suffered a

loss by reason of the fraud of Blackwell in directing the treasurer to apply the check on the wrong account, but, until that fact is shown, the primary responsibility must rest where the original shortage occurred. It is unnecessary for us to decide those questions now. The only proposition with which we are concerned is whether or not the payment operated to exonerate the Fidelity & Casualty Company of New York from its liability then existing. It is argued that there is no evidence to establish liability against the Fidelity & Casualty Company of New York, and it is insisted that the record shows that the default for which this claim lies was Blackwell's, and not Patterson's. Clearly, however, a default in the tax account, even by Blackwell during the period when he was an assistant to Patterson, must be chargeable against the surety on Patterson's bond, and not against the later surety, who came in after Blackwell was elected waterworks clerk, as his security for water rentals, and not taxes. The record clearly indicates a deficit in Patterson's accounts at the time when the check here involved was given by Blackwell to the city treasurer. In the absence of any evidence to show that the tax account was not properly chargeable with this admitted deficit, it is difficult to see how it can be successfully disputed that Patterson's surety is liable to this extent.

It is further urged that the findings of the special commissioner, as confirmed by the chancellor, are conclusive on appeal. This may be true as to findings of fact. Chenault v. Southern Trust Co., 245 Ky. 305, 53 S. W. (2d) 369; Theatre Realty Co. v P. H. Meyer Co., 243 Ky. 346, 48 S. W. (2d) 1; Williams v. Denny, 238 Ky. 662, 38 S. W. (2d) 668. Certainly, unless this court is completely to abdicate its functions, we are not concluded by the findings of law as applied to the facts. We have accepted the facts as found by the commissioner and by the trial court. Our only disagreement is with the conclusions of law applied to those facts. Having concluded (1) that the city treasurer had no right to apply water rental funds to another account when his act in doing so was prejudicial to the interest of the innocent surety in those funds, and (2) that no estoppel exists against the right of the city now to make a proper allocation of its

various accounts, we conclude that the judgment in each case was erroneous and must be set aside.

Judgment reversed.