Affirming.
This is an appeal from a judgment of the Fayette circuit court sitting in equity. Appellants' decedent. E.R. Blackburn, was for many years the cashier, and later president, of the appellee, Union Bank Trust Company. He was the chief executive and active managing officer of the bank. A considerable portion of the business transacted by the bank consisted of loans secured by mortgages on real estate. This portion of the bank's business was handled almost exclusively by Mr. Blackburn. Subject to the approval of the board of directors, he decided whether a loan should be made and determined the sufficiency of the security and the validity of the mortgagor's title. About the year 1920, Mr. Blackburn conceived a plan whereby he could make a personal profit out of these mortgage loan transactions. Instead of referring to an attorney for the bank the duty of examining and passing upon the sufficiency of the titles of prospective borrowers or permitting borrowers to employ their own attorneys to furnish an abstract and report on the title, he required the borrowers to pay a service charge to cover what, in his opinion, was a sum sufficient for examining the title, preparing the mortgages, appraisements of the property, and for other incidental expenses. The record indicates that at some time shortly prior to 1920 the Fayette County Bar Association had adopted a scale of fees to be charged for title examinations and that Mr. Blackburn adopted this scale as the basis for the greater part of the service charge which he required the borrowers to pay. He customarily employed a regular practicing attorney of the Fayette County Bar to *Page 701 
examine and report on the titles, and paid him a fixed fee of $10 for each title examined. Similarly, he paid a stenographer in the bank for her services in preparing the mortgage and tending to other details in connection with the transaction, and he paid $1 to one of the other bank officials to cover the expense of visiting and inspecting the properties to be mortgaged for the purpose of making an appraisal. He paid the county clerk the regular recording fee of $2 for recording the mortgage, and he pocketed the balance of the service charge.
The evidence indicates that in a number of instances the service charge was withheld from the loan, the borrower being credited on the books of the bank with the face amount of the note given, less the service charge. The amount of the service charge would be withdrawn from the note teller's cash in order to balance the books of the bank and would be distributed in cash by Mr. Blackburn as above indicated. In other instances, borrowers gave Mr. Blackburn a check payable to the bank for the amount of the service charges. So far as the record discloses, in none of these instances was a check made payable to Blackburn himself. Mr. Blackburn would customarily take these checks to the note teller and get the cash on them without an indorsement and would follow the same procedure in making a distribution of this cash, converting the major portion to his own use. In a few instances the borrowers paid the amount of the service charge in cash, but in no instance is it shown that this payment was to Blackburn personally and not as agent for the bank.
The commissioner found that Mr. Blackburn concealed from the bank that he was making a personal profit from these transactions. It is difficult to reach any other conclusion from the circumstances here presented. On April 1, 1929, two of the directors of the bank learned of Blackburn's practice in the handling of service charges and immediately confronted him and demanded that he desist. Mr. Blackburn agreed to stop, but a few months later it was discovered that he had renewed the practice. The matter was thereupon laid before the board of directors and it was discovered that Mr. Blackburn had followed a scheme of personal aggrandizement at the expense of the bank and its borrowers *Page 702 
for a number of years. Demand for restitution was made and refused, and Mr. Blackburn's resignation and this suit for an accounting followed.
The petition sets forth at length various loan transactions, the amount of the service charge collected in each instance, the disbursements therefrom to persons other than Blackburn, and the amount converted by Blackburn to his own use. It is alleged that Blackburn collected these sums as agent for the bank for services rendered the borrowers by him as agent for the bank and that he had unlawfully converted the portions of the service charges set out.
In his answer, Mr. Blackburn did not deny the correctness of the service charges as alleged, nor the correctness of the disbursements made therefrom to others than himself. In many instances he admitted, by not denying, the conversion of the portions of the service charges as alleged. In some instances he denied converting any portion of the charge, and in other instances denied converting any portion in excess of a certain sum. He did not undertake, however, to show how he had distributed the portion of the service charges which he denied appropriating to his own use. He denied that the service charges had been collected by him as agent for the bank or that he rendered any services to the borrowers as agent for the bank. He alleged that the charges collected by him were reasonable for the services rendered, including his own services. The answer pleaded affirmatively that the directors had full knowledge of, and had consented to, the acts complained of, and the five-year statute of limitations was interposed. The plaintiff's reply traversed the affirmative defenses and completed the issues.
The case was referred to the master commissioner, the court holding that the burden of proof was upon Blackburn. Shortly after the suit was filed, Blackburn died, and the case was revived against his personal representatives. The only evidence offered for the defense was that certain of the notes referred to in the petition had been paid in full with 6 per cent. interest. Apparently, the purpose of this evidence was to establish a basis for claiming that the service charges were usurious in order to cast the opprobrium of an illegal contract on these various transactions. The evidence *Page 703 
taken by the bank, aside from voluminous details concerning loan transactions, was directed mainly to the fact that it did not discover, and could not by the exercise of reasonable diligence have discovered, the acts complained of within five years prior to the filing of the petition.
So far as pertinent here, the commissioner found that the service charges were collected by Blackburn as agent for the bank, that Blackburn concealed from the bank the amounts collected from borrowers to cover the service charge, and that the bank did not discover the acts complained of and by the exercise of reasonable diligence could not have discovered said acts prior to April 1, 1929. The chancellor approved the commissioner's findings in toto. Where the findings are supported by substantial evidence and the evidence is such as to leave the mind in doubt concerning the truth of the controversy, the finding of the chancellor will not be disturbed. Hite's Adm'r v. Hite's Ex'r, 265 Ky. 786,97 S.W.2d 811; Ream v. Fugate, 265 Ky. 463, 97 S.W.2d 11; Manchester National Bank v. Herndon, 181 Ky. 117,203 S.W. 1055, and cases there cited. In the case at bar, we find no room for doubt on the evidence as to the correctness of the findings of fact.
Based upon his findings of fact, the commissioner arrived at the following conclusions of law, which were likewise approved and adopted by the chancellor: (1) That Blackburn had no right to make a personal profit from the loans without a disclosure of the facts to the bank and that all profits realized in making loans belong to the plaintiff bank; (2) that it was the duty of Blackburn to account for the money which came into his hands and that the burden was on the defendants to show that Blackburn had made a proper disposition of the amounts admitted to have been received by him; (3) that the plaintiff is entitled to interest upon the amounts retained by Blackburn; (4) that all claims asserted by the plaintiff for moneys received by Blackburn prior to November 4, 1920, were barred by the ten-year statute of limitations, Ky. Stats. sec. 2519; (5) that none of the claims asserted for moneys received subsequent to November 4, 1920, were barred by the five-year statute of limitations, Ky. Stats. sec. 2515; (6) that the plaintiff bank is entitled to recover the *Page 704 
specific amounts set out in the findings, together with interest and costs.
It is argued by the appellants that Blackburn was not obligated to pay the bank sums charged borrowers for his (Blackburn's) services. Appellants rely on the case of Lancaster Loose Leaf Tobacco Co. v. Robinson, 199 Ky. 313,250 S.W. 997. The argument rests on the false premise that Blackburn was acting on behalf of the borrowers and was performing services for them which the record does not substantiate. The proof fully supports the conclusion that Blackburn acted in all the transactions as agent of the bank and on behalf of the bank. Even if he had actually performed some service for the borrowers, we can find no justification for his action in converting money paid to the bank without its knowledge or consent. The decision relied on has no application to the facts here presented. The profits here realized were received by the defendant, not in his own name, but in the name of the bank and belong to the bank, whether they were reasonable and proper or not. If the charges were not reasonable and proper, then the borrowers, and not Blackburn, are entitled to them. Under no circumstances can they be considered the property of Blackburn.
It is similarly urged that the money sued for has been extracted from borrowers through an illegal and immoral plan to which the plaintiff was a party either originally or by ratification through its attempt to recover the amounts collected from Blackburn. Aside from all other questions, it is obvious that even if the sums collected from borrowers were improper and illegal, this is a matter between the bank and the borrowers, and furnishes no basis for a claim by Blackburn that he is entitled to retain sums appropriated from the till of the bank pursuant to his own machinations. It would require a violent presumption to assume that the attempt here to recover amounts collected by an erring agent amounted to a ratification or approval of the agent's wrongful acts. Irrespective of whether the service charge was excessive or usurious, the money was collected by the bank through Blackburn as its agent. It was the bank's money, and not Blackburn's, and it is obvious that Blackburn's wrongful acts cannot justify him in converting the money to his own use on the theory that he should not have collected it in the first place. Furthermore, Blackburn *Page 705 
himself alleged in his answer that the charges made were not in excess of the reasonable value of the services rendered "by him." In the face of this pleading, it is difficult to find a basis for assuming that any question of usury is presented in this record whatever the issue might be between the bank and one of the borrowers.
It is argued that the bank is not entitled to an accounting (a) of fair compensation paid to its officers for title examinations made by them at the request of borrowers, or (b) for money extorted from borrowers by misrepresenting the cost of title examinations. At the outset it may be pointed out that the commissioner affirmatively found that the service charges were collected by Mr. Blackburn as agent for the bank. We would not disturb this finding confirmed by the chancellor even if we were disposed to doubt its correctness. National Surety Corp. v. City of Bowling Green. 265 Ky. 36, 95 S.W.2d 1080; Chenault v. Southern Trust Co., 245 Ky. 305, 53 S.W.2d 369; Theatre Realty Co. v. P. H. Meyer Co., 243 Ky. 346,48 S.W.2d 1; Williams v. Denny, 238 Ky. 662, 38 S.W.2d 668. The money was collected for the bank and in the name of the bank, and it was the bank's money, and not the money of the borrowers, when it was misappropriated. We find no evidence whatever of any agreement on the part of the bank to pay Mr. Blackburn anything other than his regular salary, and we find no evidence of a request to Mr. Blackburn from any borrower that he look at a title. The only evidence that Mr. Blackburn ever examined a title is sought to be inferred from the fact that he was frequently seen in the county clerk's office. Opposed to such an inference from his appearance in the clerk's office is the fact that he might have been there to make transfers or releases or for any of a dozen other purposes entirely foreign to the mission that appellants would have us imply. But even assuming that he examined titles, there is no showing that he did so with the knowledge or consent of the bank or with any authority to make a personal charge for these services. Indeed, it is expressly found that he concealed from the bank the amounts pocketed by him. "Unless otherwise agreed, an agent who makes a profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal." Restatement of the Law of *Page 706 
Agency, sec. 388. The rule that an agent may not use his position to obtain a personal profit without the consent of his principal is so well and so thoroughly settled as to make a comprehensive collection of authorities unnecessary. For example, see Commonwealth ex rel. Vincent v. Withers, 266 Ky. 29, 98 S.W.2d 24; King Construction Co. v. Mary Helen Coal Corp., 194 Ky. 435, 239 S.W. 799; Johns v. Parsons, 185 Ky. 513, 215 S.W. 194.
Appellants claim that because the bank was without authority as a corporation to engage in the examination of titles "as a business," equity will not lend its aid to further the collection of profits derived from this "business." Appellants here again assume that the sums sought to be recovered are in some way tainted by the original impropriety of Blackburn's actions even though paid to the bank and appropriated by him from the till of the bank. A lender may lawfully require a borrower to pay the actual and reasonable costs of examining and appraising the security for the loan. Ashland National Bank v. Conley, 231 Ky. 844, 22 S.W.2d 270. The bank did not hold itself out as engaging in the business of examining titles. On the contrary, the major portion of the service charge was ostensibly made for the purpose of paying an attorney to perform this service. Certainly this was not ultra vires. The commissioner has found that the charge was reasonable, and the mere fact that Blackburn wrongfully appropriated a part of it cannot alter the power of the corporation to make the charge. As we have pointed out above, the question of the rights of borrowers in the premises is not before us. The right of the bank, on the other hand, to its own funds, misappropriated by its agent, cannot be the subject of doubt.
In the final analysis, every action here relied on to render the transactions illegal was the act of Mr. Blackburn himself. His whole defense rests on the assumption that the bank, through him, was a participant in his wrong, and from this he seeks to apply the maxim, in pari delicto potior est conditio defendentis. The maxim assumes the equal guilt of the plaintiff and defendant. Carpenter v. Arnett, 265 Ky. 246,96 S.W.2d 693. It is inconceivable that the bank was here in equal guilt with Mr. Blackburn. Its attempt here to recover its own property does not make it so. *Page 707 
Finally, appellants seek to invoke the five-year statute of limitations and the alleged laches of the bank in the prosecution of its claim. In the face of the finding that the bank did not discover, and could not by the exercise of reasonable diligence have discovered, the misappropriations of Mr. Blackburn prior to April 1, 1929, when by chance the matter was brought to the attention of two of the directors, and in the face of the finding that Blackburn himself concealed his actions, there can be little doubt of the correctness of the view taken by the chancellor. We find no basis in the record to invoke the doctrine of laches against the bank. There was no unreasonable or unexplained delay in the enforcement of its rights after they became known.
On the whole record, we find no error which may be deemed prejudicial to the substantial rights of the appellants.
Judgment affirmed.