# Haas v. Fidelity & Columbia Trust Co.

Feb. 9, 1940.

L. C. Yeast, Thos. A. Schneller and W. G. Dearing for appellant.
Thos. A. Ballantine for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

On April 16, 1934, appellant by written proposal offered to purchase from appellee two lots which it owned in Louisville, with two buildings, admittedly in

a run down condition. The writing evidenced that appellant would pay to appellee the sum of $900 for the lots; a cash payment of $100 within sixty days, and "assume" a mortgage for the unpaid balance. It was proposed that upon payment of the $100, a deed should be made to purchaser, with usual covenants. Appellant appended to his writing these words: "The above proposition is good for two days."

Appellee did not accept the proposal in writing, but it is apparent that the terms contained in appellant's letter were verbally accepted, with a further verbal condition that appellant should make some needed repairs, as it is claimed "to put the property in a tenantable condition." With this understanding Mr. Haas took possession of the property about April 18, 1934, and held same until April 1, 1935, and during this period appellant made what is claimed "considerable lasting repairs and improvements." Appellant claims that such repairs as were made were of trivial and temporary nature, and this conflict of opinion brings the controversy before us.

On September 14, 1934, appellee in writing notified Mr. Haas that such repairs and improvements as had been made up to that time, were unsatisfactory, and that it was not possible for it to make a deed conveying the property. In this same letter appellee returned four checks for $25 each, all dated in September and October of 1934. The appellee had never cashed any one of them, and it is in proof that appellant never, during the period, had on deposit a sufficient sum to pay more than one of the checks. The result was that no cash payment had ever been made on the property.

This letter further advised appellant that unless he was in a position to put the property in good condition within the following thirty days, "it will be necessary for us to consider the agreement with you * * * null and void, and ask for possession at that time." Appellant contends that upon receipt of the letter he called upon an employee of the appellee for the purpose of ascertaining "what was wrong," and was advised by Mr. Polk to "go ahead and finish the repairs." There is some contention on this point, nevertheless it is clear that appellant held possession until April of 1935, at about which time he surrendered the property to appellee, and in the interim it is claimed, appellant continued

to make repairs on the property. The amount claimed to be due was something over $1,000, and for which appellant filed a mechanic's lien.

Shortly thereafter, appellee filed its petition in equity, in which it sought to cancel the contract so as to remove the cloud from its title caused by the filing of the mechanic's lien. It also sought judgment against appellant in the sum of $270. This arose, they say, because the rental value of the property for the period of possession was $420. Appellee admitted that the repairs made by Haas were of $150 in value and no more.

Appellant, later joined by his two sons, filed joint answer and counterclaim. This answer controverted appellee's pleading, insofar as respondents deemed denial necessary, and set up and relied on their alleged mechanic's lien for materials, supplies and labor furnished in making the repairs. There were two amendments filed, and in one at least, the respondents plead alternatively, that if it should appear to the court respondents were not entitled to recover on the mechanic's lien, they were nevertheless entitled to have recovery on an equitable lien, to the extent that their efforts and the furnishing of labor and materials enhanced the value of the property.

After issue was made on the matter as to appellant's right to maintain his mechanic's lien, the cause was referred to the commissioner to ascertain and report, (a) whether or not improvements had been made on the property by appellant, and what labor and materials had been furnished, and the reasonable cost of same. (b) Whether the party making the repairs had furnished labor and materials, and if so, whether entitled to mechanic's lien, and to what amount. (c) What sum would represent a fair and reasonable satisfaction for the use and occupancy of the plaintiff's property by defendant, if any.

The commissioner heard considerable proof offered by both parties, and on October 10, 1936, reported that from the proof the appellant was entitled to the sum of $1,057.04, and to enforce his mechanic's lien. He recommended judgment based on his conclusions.

Appellee filed exceptions to the report and recommendation of the commissioner, but before the court ruled

on the exceptions, or appellant's motion to confirm the report and recommendation, other pleadings were filed, and numerous motions made and passed upon by the court.

Later the court again referred the matter to the commissioner to hear proof and make report on improvements made between April 16, and October 14, 1934 (the latter being 30 days after notice that the property would be repossessed), and (2) to report the enhancement in value of the property by reason of the repairs made between the two dates. Also to report the enhancement in value by improvements made after October 14, 1934, and to report on the nature and extent of the contract under which possession was given to appellant.

The commissioner in both reports found the facts to be substantially as above stated. He concluded that at the time of possession there was a verbal contract for the sale, as per letter, and which (verbal contract) required repairs to be made, the making of which necessitated the furnishing of material and labor by appellant, this being a part of the consideration of sale. He found that appellant, having furnished such materials and labor, was entitled to a lien and its enforcement. The commissioner expressed the opinion that appellant had not sought recovery on the ground of establishment of equitable lien, the recovery to be measured by enhancement. His idea was expressed as follows:

"Had the contract only involved the sale of the property, without the further provision as to making repairs, and had the contract been rescinded after making the improvements, defendant's remedy would have been under Section 2464, Kentucky Statutes, which provides in part: 'the lien * * * shall follow the property * * * by reason of [the] rescission, to the extent only that the actual value of the property may be enhanced by the improvements * * * placed on it.' "

The commissioner found the proof as to value of the repairs to be "conflicting and divergent," and commented that appellee's proof was based on a "bird's eye" view, and gave more credence to appellant's proof because of close acquaintance with the work. He did

find that the property was enhanced in value by making the improvements to the amount of $1,057.04, from which he deducted a net rental item of $45, leaving his figures at $1,002.04. He also reported that appellee had no claim on appellant for use and occupancy during the period, and that appellant's sons were not entitled to a lien, since they had not contracted with plaintiff, and had failed to give the statutory notice, and recommended judgment in accord with his recommendations.

Exceptions to such items of the report as plaintiff deemed proper were filed, and they covered almost the entire report. The chancellor sustained the exceptions, and adjudged substantially as follows:

(1) The mechanic's lien, which constituted a cloud upon appellee's title, was cancelled and held for naught, and directed to be released by appellant.

(2) The counterclaim of appellant and his two sons was dismissed.

(4) Plaintiff to recover of defendant so much of its cost as have been incurred by reason of the matters contained in plaintiff's petition and amended petition. The court then further adjudged:

It appearing from the pleadings and proof herein that defendant took possession of the property under a verbal contract to purchase, and that certain repairs were put on the property by defendant while in possession under that agreement, and it further appearing that the repairs were made between April 16 and October 14, 1934, by the defendant in good faith, and same have enhanced the value, and defendant, by amended answers and counterclaims seeks to recover for the enhancement of the value, the court adjudges:

(a) That defendant recover of plaintiff on his amended pleadings the sum of $250, with interest at 6% from April 1, 1935, being the reasonable enhancement in value of the property by reason of the repairs.

(b) The plaintiff will recover of defendant, as a credit against the sum above set forth, interest at the rate of six per cent per annum, on the purchase price of the property, to-wit, $900 from April 14, 1934, to April 1, 1935.

(c) Defendant is adjudged a lien on the property to secure him in the payment of the sum above set forth.

(d) Defendant will recover of plaintiff his costs incurred by reason of the matters set up in his amended answer and counterclaim.

Both parties excepted and objected and only Joseph W. Haas is appealing.

We shall take up the contentions of appellant in the order as recited in brief, which does not comport with Section 2 of Rule 5 of this court. The first argument is the expression of a firm belief that plaintiff has from the beginning of the relationship, acted in bad faith with appellant. We shall not go into details, but may remark from our observation of the record, plaintiff might well plead an off-set, since it is shown that appellant did not for a long time undertake to comply with so much of his contract as evidenced by the unaccepted writing, and took 270 days of labor to make alleged improvements.

It is suggested that it is the belief of counsel that the burden of proof was on defendant. This would become the subject of argument, if any mention had been made before the chancellor when the pleadings were made up. See notes to Section 526, Civil Code of Practice. In construing that section we have frequently held that where the pleadings present several issues, which if singly tried, would shift the burden, the court may exercise a broad discretion in placing the burden. London & P. M. & F. Ins. Co. v. Mullins, 268 Ky. 814, 105 S. W. (2d) 1057, and cases cited. Such was the case here, and while we find no suggestion by counsel as to burden, the orders of reference seem to show such to have been properly allocated.

The commissioner in his final report allowed appellant $1,037; the chancellor, after a review of the evidence, reduced the amount recommended to $250, and this is charged by appellant to have been an egregious error. His contention is that, under all the proof, he should have been allowed the sum fixed by the commissioner, because the preponderance of proof showed that this was near the enhancement value. Counsel contends in brief that on his counterclaim appellant had the burden, and suggests that he successfully carried it.

It would serve no useful purpose for us to under-

take to give in detail any appreciable portion of the much too voluminous testimony on this question. It is asserted by appellant that when he was given possession of the property it was in a deplorable condition; very much run down, and sadly in need of repairs. To an extent this is admitted by the vendor, and this condition was, perhaps, the chief reason why the price fixed was low, since it is said by appellees the repair consideration was added so as to secure better the $800 deferred payments. It is also admitted by both parties that the property is not situated in the most desirable portion of the city.

It appears to us from the proof that some of the repairs made were such as not contemplated in the contract; we might mention replacements, and the placing in one storeroom of fixtures required in the operation of a saloon. We might mention others, but they do not materially enter into the discussion.

Appellant, after testifying at length as to the labor performed, the materials and supplies furnished, and used in making the repairs, estimated the value of enhancement by reason of the improvements to be $1,500; $200 of this he allocated to such improvements as had been placed on the property thirty days after the notice of cancellation, thus leaving his recoverable estimate at $1,300.

Harry Cook, a contractor and witness for plaintiff, who had never seen the property, except casually, until a short while before, testified, and basing his conclusion of the condition of the property as described to him, and partly on the amount of labor and materials necessarily furnished, fixed the market value of the property at $2,600, and the enhanced value at about $1,900.

Mr. Anderson, a paper hanger, with some painting experience (testifying on the mechanic's lien phase), had seen the property soon after appellant took possession and three or four times thereafter, fixed the enhancement value at from $1,000 to $1,500, however, part of his testimony is based on the quantity of labor and materials which he thought would be necessary to make the property tenantable.

Mr. Jones, a real estate agent, saw the property in May, 1938, hence he based his opinion on hypothetical

queries, and the rentable value of the property; he estimated the enhancement value at about $1,100.

Mr. Polk, an employee of appellee, engaged in looking after the renting, repairing and selling of properties which had come into appellee's hands by reason of foreclosures, and with more than fifteen years' experience, testified that he was thoroughly familiar with the property prior to appellant's taking possession, and had visited it at frequent intervals during the times of appellant's possession. He saw the property after appellee's repossession. He fixed the enhancement of the value by reason of repairs done by Mr. Haas, at $100. It appears that during the taking of proof the appellant was offered the property at $1,000, which offer might have been accepted but for a counter proposal of Mr. Haas' that appellant would agree to pay the costs of litigation. It also appears that after being repossessed, the property was sold to one of appellant's tenants for about $1,000.

Mr. Bierbaum, a real estate agent who had brought vendee and vendor together on the proposed sale, and had been in the real estate business for twelve years and saw the property each week during appellant's possession, says the character of repairs and improvements made by Mr. Haas did not enhance the value at all.

The chancellor, in his opinion, attached great weight to the testimony of Mr. Waldman, who had been engaged in the contracting business for seventeen years, during which time he had bought several pieces of property with a view of repairing and reselling. This witness saw the property before the transfer and after repossession. His opinion was that the property could have been put in rentable condition for about $350. He goes into detail in describing the repairs made, with the exception of the roof and some other minor points, and fixed the enhancement value at $250. This sum was in turn accepted by the chancellor as the amount of recovery.

Mr. Goodman, a contractor with more than 30 years' experience, who examined the property with particular regard to the type of repairs, the condition of which he describes to some extent, after a none too careful examination, said that the value of the property was not

enhanced at all; basing his opinion on the character of improvement made.

There are some pictures filed as exhibits, one made by appellant after the improvements, and two by appellee, one before and one after improvements were made. These mute witnesses give us only an idea of the exterior; none of the interior or the roof, and we have been unable to glean helpful information from them; none, perhaps, further than to show that the properties are of cheap or inferior quality.

Under our repeated decisions we have held that great weight is to be given the findings of fact by the chancellor. We have consistently written that upon review, unless there be more than a doubt created in the mind of the court, the chancellor's judgment will prevail. Upon this review we have given careful consideration to the conflicting evidence, and are compelled to say that we agree with the chancellor in his appraisement of the evidence.

It is contended that the court erred in discharging the mechanic's lien, which was procured by appellant (and sons) on May 8, 1935, more than six months after the expiration of the thirty days' notice of September 14, 1934, although it is stated in the copy of the lien exhibited, as well as in pleadings, that the last labor and materials were furnished in April 1935, long after the notice of repossession, and after appellant had failed to comply with the requirement of cash payment. It may be that speaking strictly from a legal standpoint, his alleged lien was not sustainable because of lack of requisite notice. Kentucky Statutes, Section 2463.

However, we note that the chancellor in his judgment was of the opinion, that by the pleadings, motions and orders, the appellant in a measure abandoned his claim based on the statutory lien, and chose to proceed thereafter to maintain his alleged equitable lien. We note that it was upon his motion that the matter was referred to the commissioner to hear proof on the enhancement of the value of the property by reason of such improvements as were placed on the property between April and October 1934; the commissioner so reported, and the chancellor limited the amount of recovery to the enhancement occasioned by the repairs up to

the latter date. Counsel's argument that by reason of the provisions of Section 2464, Kentucky Statutes, the lien, though equitable, entitles appellant to a mechanic's lien, is untenable. As we read the section referred to we cannot see how it can be applied to the case we have here.

However, the question as to whether the equitable lien adjudged should now be declared a mechanic's lien, is of little importance, save and except as to the allocation of costs, and about the fixing of which by the chancellor, appellant is now complaining. As will be noted above, the court adjudged that the plaintiff should recover of defendant "so much of its costs as have been incurred by reason of the matters contained in its petition and amended petition, and appellant's answer and counterclaim thereto." In another paragraph it was adjudged that defendant recover of plaintiff such costs as he incurred by reason of the matters contained in his two amended answers and counterclaims. While it might and does appear that the allocation of costs is a little confusing, we assume that what the court intended, was to require the defendant to pay such costs as were brought about by the effort on the part of appellee to have its title cleared by a discharge of the mechanic's lien, in which it was successful, and to collect rent for the period in which appellant held possession, in which effort it was also successful, though not on the same basis as was claimed.

As to costs recoverable by appellant from appellee, we take the court's judgment to mean that in so far as appellant sought to establish his mechanic's lien, and was unsuccessful, he should be liable to appellee for such costs as it incurred or expended in contesting this proposition. The appellant was successful in establishing his right to a lien, equitable in nature, for the amount of enhancement to the property.

On this phase of the case the appellant is entitled to recover of appellee all costs incurred or expended, in so far as such were occasioned by appellant's endeavor to establish his lien, as finally adjudged.

As indicated above, with reference to the court's finding on the chief issue, we see no reason for disturbing the finding of the chancellor in respect to the other

contentions presented. The matter of costs, as is suggested by appellee, in this class of cases, is one of discretion vested in the chancellor. Chenault v. Southern Trust Co., 245 Ky. 305, 53 S. W. (2d) 369. We do not agree with conclusion of appellant that the court in adjudging costs abused that discretion.

Judgment affirmed.