## Wilhoite et al. v. Kemper.

Oct. 19, 1945.

L. M. Ackman for appellants.

Leslie W. Morris, Marion Rider, and Robert C. Ford for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

Appellee, W. W. Kemper, brought this equitable action against V. B. Wilhoite for the settlement of a partnership formed for the buying and selling of tobacco and to recover $1538.72, which he claimed as half of the partnership profits. E. Porter Ransdall filed an intervening petition in which he averred that he was the third member of the partnership and was entitled to a third of the partnership profits of $3077.45. There is no controversy as to the amount of the profits and the only issue was whether the partnership was composed of Wilhoite and Kemper, with each being entitled to half of the profits, or whether Ransdall was a partner and entitled to a third of the profits.

Upon hearing the proof the chancellor held that the partnership was composed of Wilhoite and Kemper and adjudged that the $3077.45 be divided between them, and Wilhoite and Ransdall appeal.

Wilhoite's answer contained a counterclaim against Kemper wherein he sought to recover $197.80 from the latter growing out of some farm operations of these two gentlemen, which were in no wise connected with the partnership to buy tobacco, and the court correctly dismissed the counterclaim under the authority of Sec. 96 of the Civil Code of Practice.

In November 1942 Wilhoite and Kemper entered into an oral agreement whereby they formed a partnership to buy and sell tobacco during the 1942-43 sales season. Each agreed to furnish $1000 which was turned over as a deposit to the Globe Tobacco Warehouse Company of Shelbyville, Kentucky, and upon this $2000

margin the Globe agreed to finance the tobacco pur-
chases of the partnership, which were to be sold over
the Globe's floor.  Wilhoite and Kemper made a joint
note to the First State Bank of Monterey for $2404.85,
of which $2000 was paid to the Globe.  The tobacco the
partnership purchased was from growers in Owen
County.

. Ransdall formerly lived in Owen County and during
the tobacco season he solicited crops to be sold over the
Globe's floor and received a commission of $1.50 on each
1000 pounds of tobacco from Owen County which was
sold in the Globe's warehouse.  Wilhoite was 67 years
of age, Kemper was 71 and neither was in good health.
Ransdall was 65 years of age and appears to have
been in good physical condition and was more vigorous
and active than were the other two.  About 40 crops
were purchased by the partnership of which Kemper tes-
tified he purchased 31.  As the tobacco was delivered to
the warehouse it was to the partners' interest to be on
the floor and see that it was properly handled and
graded.

Wilhoite realized he was not able to spend the nec-
essary time in the warehouse and his testimony was that
Kemper was drinking heavily and was not looking after
the tobacco as it arrived, so about December 16 he and
Kemper agreed it was for their best interest to take
Ransdall in as a full partner.  Wilhoite testified that he
offered Ransdall a one-third interest in the partnership
and that the latter accepted.

Kemper testified that he was not drinking during
season nor did he fail to give the necessary time and
attention to the tobacco as it was received in the ware-
house; also, he denied that he ever agreed to take Rans-
dall in as a partner and testified that the subject was
never mentioned to him by either Wilhoite or Ransdall.
It is not contended by Ransdall that Kemper ever agreed
with him that he would be taken in as a partner, and
Ransdall's testimony is to the effect that Wilhoite told
him that he and Kemper had agreed to do so between
themselves.

There is a direct conflict in the testimony of Wil-
hoite and Kemper but the surrounding facts and cir-
cumstances all support Kemper and contradict Wil-
hoite.  The partnership had to make a bond to the fed-

eral government in which the names of all partners should be divulged and Ransdall's name did not appear in this bond, but only the names of Wilhoite and Kemper. Kemper and Ransdall were together constantly during the sales season and talked about the marketing and grading of tobacco, yet Ransdall testified the fact that he was a member of the partnership was never mentioned between them. Several witnesses testified that Ransdall told them he had no connection with the partnership. True, Ransdall denied such conversations, but they support the chancellor's finding. Before this action was instituted Wilhoite gave Ransdall check for $1025. When asked whether he accepted it as a part of the profits in the partnership or for services he rendered the partnership, Ransdall replied, "I took it because I thought I was entitled to it, it was due me, and it was tendered to me."

From this record there can be no doubt that Ransdall rendered the partnership some valuable services in receiving its tobacco at the warehouse, but the evidence fails to show that he was a member of the partnership.

A strong circumstance sustaining the chancellor's finding is that while this controversy was brewing Wilhoite in a letter to Hon. Leslie W. Morris, Kemper's attorney, never mentioned the fact that Ransdall was a member of the partnership. Nor did he mention it in his correspondence with Mr. Kemper when the latter refused to accept a check for some $800 sent him by Wilhoite for his part of the profits. Kemper testified that he never heard of Ransdall being a partner until Wilhoite pleaded that fact in answer to the petition filed in this action.

Complaint is made that the chancellor adjudged that Kemper should recover his costs against Wilhoite, it being contended by the latter that under KRS 453.040(2) in a suit to settle a partnership the costs should be prorated between the partners. While it is true that the pleadings asked a settlement of the partnership affairs, yet there was no settlement of partnership business or accounts involved and the only issue was whether Wilhoite was indebted to Kemper for one-half or one-third of $3077.45. The statute to which reference was just made gives the court a discretion in taxing costs in this character of action, Haas v. Fidelity & Columbia Trust

Co., 281 Ky. 671, 136 S. W. 2d 1088; and certainly where there is but a single issue as to the amount of one item between the partners, the chancellor did not err in adjudging the costs against that partner whom he found indebted thereon in the amount the other claimed.

The judgment is affirmed.