## Humble, et al. v. Humble, et al.

(Decided February 11, 1913.)

### Appeal from Robertson Circuit Court.

1. Contracts—Ordinary Services by Member of Family—Presumption—Extraordinary Menial Services Covering Period of Years.— While for ordinary personal services or for extraordinary services rendered in an emergency and for a brief period of time by a daughter-in-law to her father-in-law, who lives with her and her husband, an express contract to pay must be shown by stricter proof than in other cases, yet for extraordinary and menial services in waiting on an intestate who was unable to control his bowels and who suffered from syphilitic gangrene, for a period of several years, where it was impossible to get anyone else to render the service, the rule requiring stricter proof of an express contract does not apply.

2. Contracts—Extraordinary and Menial Services by Daughter-in-law —Evidence—Sufficiency.—In an action by a daughter-in-law to recover for extraordinary and menial services rendered to her father-in-law, evidence examined and held sufficient to sustain a verdict in her favor.

3. Contracts—Extraordinary and Menial Services by Daughter-in-law—When Verdict for $3,600 Not Excessive.—In this action by a daughter-in-law against the estate of her father-in-law to recover for extraordinary and menial services rendered to her father-in-law during a period of five years, evidence examined, and held that a verdict of $3,600 was not excessive.

J. J. OSBORNE and SAM THROCKMORTON, for appellants.

JOHN P. McCARTNEY, HOLMES & ROSS, ROBERT BUCKLER and SAMUEL HOLMES, for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

J. C. Humble, a residest of Robertson county, died

intestate in the year 1910. He left surviving him six children, who are his only heirs. His administrator brought suit to settle the estate. The case was referred to the master commissioner of the Robertson circuit court, to hear and report on claims. Among the claims filed against the estate was one for $6,500 in favor of Sarah B. Humble, wife of James B. Humble, a son of the intestate. This claim was for extraordinary services performed by her in nursing the intestate for a period of about five years. The claim was allowed in full by the master commissioner. Squire Humble and certain other children of the intestate filed exceptions to the master commissioner's report, and on their motion the case was heard by a jury on an issue out of chancery. The jury returned a verdict in favor of Sarah C. Humble for the sum of $3,600. The other heirs prosecute this appeal.

It appears that for several years prior to his death James B. Humble and his wife, Sarah B. Humble, lived with the intestate on the latter's farm, consisting of about 240 acres. The exact terms and conditions of the contract between the intestate and James B. Humble do not appear. There is evidence to the effect that James B. Humble rented a portion of the farm at times and collected the rent. There are one or two instances where the rent was paid to J. C. Humble. The proof in the case utterly fails to show that the services rendered by Sarah B. Humble were included in any contract intestate made with his son with reference to the occupancy of the land.

Dr. P. P. Linville testified that he was the family physician of the intestate and waited on him about five years prior to his death. Intestate was suffering from different diseases. The doctor treated him for general break-down, for kidney trouble and for syphilitic gangrene. The intestate's kidneys were very active. His bowels were uncontrollable for the last three or four years. During that time his kidneys were also frequently uncontrollable. Intestate had involuntary discharges from his kidneys and his bowels in his bed. While the intestate was afflicted with gangrene at other places, his toes had fallen off at the first joint. There was great danger of infection. In order to avoid infection he recommended to Sarah B. Humble to wear rubber gloves; this she did. Sarah B. Humble would

feed intestate, take him water, light his pipe, dress him, wash him off and change his clothes after an action of his bowels and kidneys and bathe his afflicted limbs. This she did for several years. Intestate was about 89 years of age at the time of his death. About two weeks before the intestate died, Mrs. Humble had to quit dinner and go in and wait on him. It was very offensive in the room, and the witness went out. When he returned he said: "Uncle Jimmie, I don't know what you would have done without her." And he said that she was good to him, but that she would be paid for it. He said that he could not get anybody else, and asked witness to get somebody. Witness sent a man out there and he staid two days and left. Further on the witness made the following statement:

"I think it was this way: I was talking to him about getting somebody to stay there. He said it was hard, and that she was just about worn out and couldn't lift him, and he said to me he couldn't get anybody else, and said he would as well pay her as to pay anybody else, and that he would see that she was paid."

Witness also said he considered Mrs. Humble's services worth from $20 to $25 a week. When Mrs. Humble began waiting on intestate she was a very active woman. When intestate died, she was broken down. Once there was hired help on the place for a short time. On cross-examination witness stated that trained nurses had to take a hospital course of about three years. They generally received about $25 a week.

W. F. Harber, a neighbor of the intestate, testified that about a year or so before intestate died intestate said to him: "I offered Sally $1,000 in money, and she hasn't taken it yet." The intestate further said he didn't know what she was going to do. He said for witness not to say anything about it while he was living.

Mrs. John M. Buckner testified as follows:

"Yes, sir, I had this conversation with him. I was there one afternoon and he wanted something, and I said: 'I will get it for him.' And he said he wanted Sally to get it for him; that she did everything for him and was better to him than any of his children. And I said: 'Uncle Jim, don't you pay her?' And he said: 'No, but I want to pay her, and will pay her when I am gone.' "

The witnesses testifying to the value of Mrs. Humble's services placed their value at from $5 to $25 a week.

Appellants contend that Mrs. Humble's claim is not established by sufficient proof, and that the verdict of the jury is excessive. Upon the first point, appellants insist that the facts of this case bring it within that line of cases holding that where the relationship of the parties is such as to raise the presumption that they lived together as a matter of mutual convenience, the law will not imply a promise to pay for services rendered by one to the other, but, on the contrary, an express contract must be proved, or it must be shown that at the time the service was rendered both parties intended and expected that the service was to be paid for, and in such cases stricter proof is required than in other cases. Sutherland v. Sutherland's Exrs., 142 Ky., 688; Green's Exors. v. Green, 119 Ky. 103; Bolling, etc., v. Bolling's Admr., 106 Ky., 313. It may be conceded that for ordinary personal services, or for extraordinary services rendered in an emergency and for a brief period of time, under the circumstances indicated, the rule above quoted applies, and following this rule we have frequently held that expressions on the part of the person receiving the services to the effect that the person serving was a good person and ought to be paid, are to be considered mere expressions of gratitude rather than as evidence of a contract or intention to pay. Reynolds' Admr., v. Reynolds, 92 Ky., 556; Price v. Price's Exrs., 19 Ky. L. Rep., 211. This court has recognized a distinction between ordinary services performed by the wife of the son of an intestate and services of an extraordinary and menial kind. Durr v. Durr, &c., 92 S. W., 581; Frailey's Admr. v. Thompson, 20 Ky. L. Rep., 1179. As to the latter services covering a long period of years there is no presumption that they are a gratuity, and it is not necessary to prove an express contract by stricter proof than is required in other cases. Here the intestate was confined to his bed for several years. He could not control his bowels, and frequently could not control his kidneys. Often his bed had to be changed. Not only that, but he had syphilitic gangrene on his feet and other parts of his body. Appellee had to change his bed clothing and bathe his body. In doing this she incurred danger of infection. While now and then someone was employed

to assist her, it appears that no one else could be gotten who was willing to perform these services for any length of time. It is not shown that any of intestate's other children ever volunteered to wait on him, or did perform any of the services performed by appellee. She bore this unusual burden without the assistance of any of the other members of the family. For such extraordinary and menial services as appellee performed, we think the proof is sufficient to show that they were performed with the expectation both on her part and on the part of the intestate that she should be paid therefor.

Nor can we say that the verdict is excessive. The jury found appellee's services to be reasonably worth $17 or $18 a week. The proof amply sustains this finding. This being true, we cannot say that the finding of the jury is so excessive as to justify the conclusion that it was the result of prejudice or passion.

The court instructed the jury that if they believed that there was a contract between Sarah B. Humble and J. C. Humble, by the terms of which the latter was to pay the former for caring for him, waiting on him and nursing him during his sickness, they should find for her; or that if Sarah B. Humble was expecting compensation for such services, and J. C. Humble knew that she was expecting pay for same, and he received the services expecting to pay therefor, they should find for her. These instructions are substantially the same as those directed to be given in Frailey's Admr. v. Thompson, 20 Ky. L. Rep., 1179, and Galloway's Admr. v. Galloway, 70 S. W. 48.

Perceiving no error in the record prejudicial to the substantial rights of the appellants, the judgment is affirmed.