## Ballard v. Ballard, et al.

(Decided October 19, 1917.)

### Appeal from Garrard Circuit Court.

1. Husband and Wife—Divorce—Settlement.—Where husband and wife, after the institution of a divorce suit and the attachment of the property of the husband, enter into a compromise settling the lawsuit and property rights, and the husband turns over to the wife valuable real estate and personal property, and the wife executes to him a promissory note as consideration therefor, and afterwards divorce is granted, the wife receiving and accepting the benefits of the compromise will not be permitted to defeat a recovery upon the note where it appears that the settlement was fair and equitable as to her, and she acquiesced in it for several years before the commencement of the action.

2. Executors and Administrators—Husband and Wife—Claim of Wife for Services.—Where the father-in-law lives with the husband and wife as a member of the family for ten years, and after the separation of husband and wife, continues to make his home with the wife at her request as a member of the family, the wife's claim for board and care of the father-in-law, after his demise, will be denied where an express contract to pay for such board and care by the deceased is not made manifest.

3. Executors and Administrators—Contracts—Claim for Board for Member of Family.—Where one of kin to a family resides in the household as a member of the family, the presumption will be indulged that they all live together by mutual consent as one family, and no recovery will be allowed for board and care of such person unless it clearly appear that a contract to such effect exist.

ROBERT HARDING and EMMITT PURYEAR for appellant.

J. E. ROBINSON for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

In 1897, appellant, Florence R. Ballard, and appellee, R. Houston Ballard, were married and they lived together continuously thereafter as husband and wife, until 1906, at which time the appellant, Florence R. Ballard, instituted divorce proceedings against her husband and

attached all of his property, both real and personal. About two weeks after the institution of this action and after the husband had been served with process, Mrs. Ballard having been advised by her counsel, two able lawyers of Lancaster, and by some of the best business men of Garrard county, suggested to her husband a settlement of their affairs, including the lawsuit. Immediately thereafter Mrs. Ballard and her husband met at the office of her lawyers, Messrs. Walker and Robinson, in Lancaster, and proceeded to adjust matters. In this conference, which lasted all day, Mrs. Ballard was represented by Judge L. L. Walker and J. E. Robinson, two able and experienced lawyers of that city; and was further advised by Mr. Higginbotham and Mr. R. D. Ballard, two ex-sheriffs and good business men of Garrard county, while Mr. Ballard had no lawyer or other adviser. Appellant and her counsel dictated the terms of settlement and the papers were drawn by her lawyers. The conference resulted in a settlement, whereby Ballard deeded to his wife 130 acres of fine farming land in that county, and the remainder of his real estate, 100 acres, to their four infant children. In addition he turned over to his wife all personal property, including horses, hogs, cattle, sheep, household furniture, farming implements and growing crops. He, however, received from her a promissory note for twenty-five hundred ($2,500) dollars, secured by a lien upon the 130 acres of land deeded to her. A purchase money lien in favor of R. L. Ballard, from whom the whole tract had been purchased by Houston Ballard, was assumed by Mrs. Ballard, and it was made a lien against the 100-acre tract conveyed to the children. Ballard immediately surrendered possession of all this property to his wife and children, taking only his wearing apparel and about one hundred ($100) dollars in money which was in his possession, but leaving all other property including a small bank account for the use of his wife and children. He shortly thereafter left the state and remained away for a considerable length of time. In the meantime Mrs. Ballard assumed full control of all the property and so managed it that she prospered. The divorce and attachment suit was dismissed. The note for twenty-five hundred ($2,500.00) dollars, which was the original basis of this action, bears date March 8th, 1906, and was due and payable six (6) months thereafter, with six per cent. interest. When the note fell due it was not paid, but Ballard did not insist upon its payment. Some

two years after the separation Mrs. Ballard instituted another action for divorce in the Garrard circuit court. Ballard was constructively summoned and did not appear, and she was granted an absolute divorce from appellee. Up to this time, however, the note had not been paid. After the divorce Ballard saw his former wife and discussed the payment of the note with her and she promised payment and wanted further time. Again and again they talked about the matter but no payment was made. However, she renewed her promise frequently to pay the note. Finally on the 9th of January, 1913, this action was instituted by R. Houston Ballard against his former wife upon the note for twenty-five hundred ($2,500.00) dollars, to recover said sum with interest from March 8th, 1906. It was alleged in the petition that the parties to the note had entered into a settlement and that this note was given as a part consideration therefor. To this petition Mrs. Ballard filed answer, counterclaim, set-off and cross-petition, in which she alleged in substance that at the time of the execution of the note she was a married woman, the plaintiff being her husband, and that she was not, therefore, bound on the note; and further that the note was executed without consideration, her contention being that the property which her husband deeded to her was in truth and fact her property, it having been bought and paid for with her means; and further that at the time of the execution of the paper she was in such mental state that she did not understand and appreciate the nature of the settlement, or of the writing which she executed, and that she was not therefore, bound upon the note; and further that she was overreached and defrauded in the settlement and this note was obtained from her through fraud and misrepresentation and was therefore invalid. The cross-petition was against her children, asking that they be made parties and that she upon final hearing be adjudged the owned of the 100-acre tract deeded to them, because, as she charges, the whole of the property belonged to her in the first instance, and not to her husband. The heirs of R. D. Ballard, the father of appellee, were also made party defendant and called upon to set up their claim for purchase money against the real property. She also asserted a claim against the estate of R. D. Ballard for board, washing, care and attention, which she alleged she bestowed upon R. D. Ballard during his lifetime and while he resided in her home. She further charged that the support and

maintenance of their four infant children, whom the court at her instance adjudged to her in the divorce suit, and which had been granted her in the settlement, had occasioned her great expense, and she sought to recover a large sum from her husband upon this account and to have the same set off against the note, if the note should be adjudged valid. Reply was filed completing the issue with appellant, and also answer was filed by the heirs of R. D. Ballard, setting up their purchase money claim and also controverting appellant's claim for board, and care of R, D. Ballard in his lifetime. The guardian *ad litem,* appointed for the infant children filed answer as such. Issue being joined a great volume of evidence was taken; that of the plaintiff conducing to prove that a settlement was entered into between him and his wife in contemplation of permanent separation, whereby he, then the legal owner of the land in controversy, and of a large amount of personal property, turned over all of said property to his wife and infant children in consideration of the settlement of the lawsuit then pending, and of the execution of the note of twenty-five hundred ($2,500.00) dollars by appellant; and that the same had not been paid although she had repeatedly promised to pay same even after the decree of divorce in 1908. On the other hand, appellant's evidence tends to prove that she was sick in mind and body at the time of the making of the settlement and the execution of the note, and that she was overreached and defrauded in her rights. A great deal of evidence is upon the subject of the relation of the parties before and after the settlement, and concerning the purchase of the lands and other items involved in the settlement. It is conceded that Mrs. Ballard received three separate tracts of land from her progenitors. She also received one thousand ($1,000.00) dollars in money from her guardian after she married. These three tracts of land were each sold by the husband, at different times, and the money realized was placed to his credit in bank. From one tract he realized six hundred twenty-five ($625.00) dollars; from a second, fifteen hundred seventy-five ($1,575.00) dollars; and the third, three thousand four hundred thirty-four ($3,434.00) dollars. Before the third tract was sold, however, the husband purchased the 230 acres in controversy in this case from his father, R. D. Ballard, agreeing to pay therefor eleven thousand three hundred sixty-eight ($11,368.00) dollars; one-half of which was paid cash in hand, the balance was evidenced

by a lien note executed by R. Houston Ballard. Of this first payment the money of appellant constituted a part. At the time of the marriage Mrs. Ballard was only seventeen years of age, while appellee was twenty-three. He had some personal property consisting of a horse, or horses, some money and growing crops and other property which he estimates of the value of thirty-five hundred ($3,500.00) dollars. At any rate he was an active, prosperous, young farmer. From their marriage up until their separation they lived continuously upon the land in question.

For the first few years Ballard leased the farm from his father at a rental of five hundred ($500.00) dollars per year. When he purchased the place in addition to paying the price, eleven thousand three hundred sixty-eight ($11,368.00) dollars, his father, who was then a widower, was to have a home on the farm so long as he lived and desired to remain there. In fact, the older Mr. Ballard resided with his son and daughter-in-law from their marriage until their separation and, in fact, continued in the house with the daughter-in-law after the separation until his death. He had been a very active business man and rather prosperous, but in his declining days he was feeble and required considerable care and attention. By his will he gave that part of his estate which otherwise would have gone to his son, Houston Ballard, to his grandchildren, sons of Houston Ballard, who lived with appellant, their mother. These bequests amounted to about three thousand ($3,000.00) dollars.

The purchase money indebtedness against the lands at the time of the settlement amounted to about twenty-one hundred ($2,100.00) dollars, and this under the settlement was a lien upon the 100-acre tract deeded to the children, while the twenty-five hundred ($2,500.00) dollar note, executed to Houston Ballard by his wife, was made a lien exclusively upon the 130-acre tract deeded to the wife.

Upon final hearing the chancellor adjudged plaintiff, R. Houston Ballard, entitled to recover the twenty-five hundred ($2,500.00) dollars due upon the note with interest, but allowed appellant, Mrs. Ballard, one thousand ($1,000.00) dollars upon her claim for support and maintenance of her children, this sum to be set off against the note and interest, as of date of the judgment. It was further adjudged that the estate of R. D. Ballard recover the balance of the unpaid purchase money with

interest, and this sum was adjudged a lien against the 100-acre tract, while the amount of this note was adjudged a lien against the 130-acre tract. The chancellor dismissed appellant's claim for services and board charged against the estate of R. D. Ballard. From this judgment Mrs. Ballard prosecutes this appeal, but appellee, Houston Ballard, prosecutes no cross-appeal as against that part of the judgment awarding one thousand ($1,000.00) dollars for the support and maintenance of his children.

It is insisted that Mrs. Florence R. Ballard, at the time of the making of the settlement contract with her husband, was incapable of understanding and appreciating the nature, contents and effect of the contract owing to her then enfeebled mental condition, and, therefore, she is not bound by the contract. Upon this subject those present at the settlement and who had the best opportunity to see and know her real mental attitude testify that she was in her normal condition and that they observed no trace of mental unsoundness or irrational condition. In fact the witnesses generally upon this subject speak principally of a time subsequent to the making of the settlement and the execution of the note. Be that as it may, she was surrounded by her friends and personal advisers. In addition she had two of the ablest lawyers of her county, who aided her and advised her in dictating the terms of the settlement, and in every way guarded and protected her interest and rights in that settlement. Moreover, the settlement was acquiesced in by her for several years after the execution of the note and she received and accepted benefits coming to her under the settlement. On the other hand appellee, Houston Ballard, was not represented by counsel at the settlement but submitted himself to the will and demands of his wife and her lawyers and advisers. So far as the record shows every suggestion with reference to the settlement came from appellant and her counsel. All Houston Ballard did was to accede to their demands. Upon the face of it, the settlement appears fair to appellant. The evidence shows that Houston Ballard for some years before his marriage and after his marriage until the separation, was an industrious, active, successful farmer who had accumulated quite a bit of personal property and some money. True the wife inherited some property from her forbears, which he converted to cash and placed to his own credit. This, however, was done with her full consent and acquiescence. They both employed themselves

in furthering and fostering the best interest of their joint estate. Nether the husband nor the wife is entitled to claim credit for the entire increase in their property and estate. Each added something to the admitted increase. While it was the duty of the husband to support and maintain the children, the surrender of all his property and effects, save and except the note for twenty-five hundred ($2,500.00) dollars (and this has not been paid), appears under the circumstances to have been a reasonable provision. It must be admitted that the wife received the lion's share of the property in the division of the estate, and she has singularly developed good business ability since she has been thrown upon her own resources. The property is worthy very much more now than when she took it.

With reference to the contention that the note sued on was without consideration, it may be said that, aside from the settlement of the pending lawsuit, appellee surrendered to appellant real and personal property variously estimated from twelve to twenty ($12,000.00 to $20,000.00) thousand dollars. While she owned and was entitled to receive a part of this property on account of her contributing to the funds that purchased it, she was certainly not entitled to it all. Appellant, Houston Ballard, received only the twenty-five hundred ($2,500.00) dollar note for all the years of effort and accumulation which he contributed to the estate, and this certainly can not be said to be unreasonable in view of all of the facts presented by this record.

By the settlement it was contemplated that with the property, appellant, Mrs. Ballard, should take some of the burdens. She sought the custody and care of the children and this was granted her not only in the divorce proceedings but also in the contract of settlement. The parties, no doubt, at the time of the settlement fully considered the matter of supporting and taking care of these infant children and one hundred (100) acres of land was conveyed to them, it must be conceded, for their support and maintenance. This 100 acres has been held and used by appellant along with the balance of the farm in maintaining and caring for herself and children. The chancellor was quite liberal with appellant in awarding her one thousand ($1,000.00) dollars against appellee for the support and maintenance of the children. It may well be doubted whether she is in law or equity entitled

to such an award, but since appellee prosecutes no cross-appeal that question is not here presented.

Immediately upon the marriage of Mr. and Mrs. Ballard they moved into the old Ballard homestead then owned and occupied by R. D. Ballard. He, according to this record, was a substantial business man, having enjoyed a measure of success. He and his son and daughter-in-law lived as one family up until the separation. Indeed when R. D. Ballard sold the 230-acre tract to his son, it was specifically agreed that he should have a home and remain upon the farm with his son so long as the father lived, if he so desired. This was a part and parcel of the purchase price for the farm. It no doubt was a very material part of the consideration for this valuable farm. In the divorce proceedings R. D. Ballard took the part of his daughter-in-law against his own son. He thought she had been wronged and desired she and her children have the benefit of the property accumulated by his son and family. After the separation, at the instance of Mrs. Florence Ballard, the father continued to live in the home with her and to advise and to assist her. He fed the stock and looked after her business matters and gave her much valuable counsel and assistance. Upon the whole we are convinced that his services more than overbalance and pay for his board and care. From the evidence we are persuaded that the claim for taking care of him is an afterthought. Aside from all this, he was a member of the family in such close relation that the presumption will be indulged that they were living by mutual consent as one family, each in some measure dependent upon the other. In such case this court has often denied the right of a survivor to claim for board, care and attention rendered the deceased relative who resided in the family. The rule established by this court is stated as follows: Where the relationship of the parties is sufficient to raise the presumption that they live together as a matter of mutual convenience, the law will not imply a promise to pay for the services so rendered. On the contrary an express contract must be proved, and to establish such a contract stricter proof is required than in a case of an ordinary contract. This rule has been applied in a long line of cases covering the various relationships of life. Bolling v. Bolling's Admr., 146 Ky. 313; Conway, &c. v. Conway, &c., 130 Ky. 218; Foley v. Dillon, &c., 105 S. W. 561.

There is no evidence whatever that R. D. Ballard contracted or agreed to pay his daughter-in-law for board and attention, and this being true, the circumstances in this case bring it within the rule above announced, and the chancellor properly denied her right to recover upon her claim for board and services. Her right of recovery was not denied because the court was not fully convinced that she performed the services, because from the record it fully appears that she was very kind and attentive to R. D. Ballard in his sickness and declining days. Beyond a question she rendered him invaluable service, but the relationship considered, it was no more than her duty or what he was entitled to expect and receive at her hands.

The chancellor had the advantage of a personal acquaintance with the witnesses and parties to this controversy and was, therefore, in position to know the facts and to arrive at the truth. His finding of fact is entitled to great weight in such a case as this, and this court finds no reason to reach a different conclusion.

Perceiving no error to the prejudice of the appellant, the judgment is affirmed.