# Corbin's Ex'rs et al. v. Corbin et al.

March 19, 1946.

B. S. Grannis for appellants.

J. A. Richards for appellees.

Opinion of the Court by Morris, Commissioner—Affirming.

The controversy arising here was begun following our opinion in Corbin v. Corbin et al., 292 Ky. 545, 166 S. W. 2d 826. After the mandate went down appellees sought to require the executors to make settlement, and distribution in compliance with the agreement mentioned in our opinion. All controversial questions arose on cross exceptions to the comprehensive report of the special commissioner, complicated here by cross appeal. Those presented for review are:

(1) Appellees presented claims against Francis for board and lodging with testatrix for a period of thirty years, at $800 per year, and against Zach for ten years board at $1,200 per year.

(2) Francis presented a claim against the estate for money paid on land and for labor performed.

(3) Zach presented a claim against the estate for $837.39 for labor performed.

(4) The executors presented a claim against Estelle Smith for $2,600, alleged to have been advanced to her by her mother.

The special commissioner took up first Item 4 and rejected the claim. The court sustained the commissioner, and correctly concluded from the proof that in a division of the lands of James Corbin there had been set apart to Estelle, at that time a girl ten years of age, two tracts of land, thereafter cultivated and used by Mrs. Corbin until Estelle's marriage, about ten years later. No guardian was appointed for the daughter, and it was shown that she had never received income from these tracts of land while living with her mother, except that while she was in school, away from home part of the time, Mrs. Corbin paid small sums for her board.

Appellants do not direct us to any evidence tending to disprove that of Estelle Smith, unchallenged, and corroborated by Mrs. Webb, in respect of the payment of the $2,600. It is only argued that it is inconceivable that the mother would have gone $2,600 in debt over and above her expenses for maintenance, merely for pasturing and planting a little corn on a small unimproved tract of land. The proof bears out the daughter's

contention that the $2,600 was in payment of what the mother considered an obligation.

The claims for board of Zach and Francis were disallowed. The chancellor, noting that the commissioner had well labeled these claims "counter-irritants," upheld the disallowance. The commissioner found lack of evidence to support the claims. When we turn to appellees' brief on this point it is merely stated, as the record shows, that Francis lived with his mother for thirty years, and Zach and his daughter for ten years, on the dower tract; they say the mother furnished provisions, kept house and had general charge of everything about the home; did the housework, including the washing and preserving, and these two sons, during the years mentioned, slept in her beds and ate her food. It is argued that these facts are not denied by appellants, and that each should be required to pay on the proven basis for at least five years just prior to the mother's death, "which five years is not covered by the statute of limitation, in the event there is any judgment in favor of either as against the estate for services." This indicates that the claims of appellees for board are closely interwoven with the claims of appellant.

There is no proof which tends to show that the two had agreed to pay, or that the mother intended to charge for, or that they had expected to pay board. No authorities are cited which would place these claims under the cases which uphold implied contract to pay. There is proof by appellants that the sons did "their share of upkeep by furnishing supplies from time to time," used in common by the whole family, and that Zach's daughter assisted in the household duties, enough to have paid for her board and lodging.

The two daughters merely testified that the boys had lived in the home for the periods mentioned, but there is nothing to indicate, even remotely, that there was an understanding on the part of the mother to charge, or the sons to pay for board. The conclusion may be reached from the proof, that these folks lived together agreeably as a matter of mutual convenience of all concerned, just as one family, thus raising a strong presumption that there was no expectation to pay or charge for board. Ballard v. Ballard, 177 Ky. 253, 107 S. W. 661; McCormick v. Jones, Adm'x, 185

Ky. 106, 214 S. W. 881. Under the circumstances nothing short of an express contract, clearly proven, would authorize a recovery.

The claim of Zach was for days worked with teams and hands, and for supplies furnished, such as seeds, etc. One claim of Francis was for $6,431.31. Of this it was claimed that the mother owed him $6,150 under agreement that if he would stay with her, "give his labor, thought and skill to the payment of her one-half of the Tom Corbin farm, which cost $12,300, she would, before she died, repay him $6,150." The balance she owed on other items. There was claimed $2,583 alleged to have been for work and labor performed for her on her land and money paid. As to the $6,431 he alleged that his mother promised to pay when she could, and these promises were renewed from time to time up until a few days before her death in 1941. This pleading did not avoid the statute of limitations. As to the other items for labor he alleges that he performed the labor and rendered much service, giving his mother such attention as would make her comfortable. He kept no accounts or books himself, but his mother kept the records on the backs of calendars which had been misplaced, with "the exception of one which was overlooked." This (exhibited) was an account with Tom. Both claimants itemized their accounts from memory.

In discussing the claim of the appellees for board of Francis and Zach, and of their claims against the estate, the commisioner referred to evidence which showed that the husband of testatrix died in 1911, leaving his widow and five children, who were at the time, with the exception of the eldest, under twenty-one years of age; all lived with the mother who undertook to make a home and a living from the property left by her husband, mostly undivided real estate. The commissioner concluded, as we do, that the plan was for the mutual convenience of all. At intervals some of the children married and took up abodes elsewhere; Francis continued to live in the home until his mother's death, and Zach had lived in the home for some time, because "he had to live somewhere."

The commissioner said he was unable (as we are) to find sufficient proof to support either an expressed or implied contract, and under the proof and decisions

of the courts in respect of persons in family relations he was compelled to disallow both claims. He found the only competent evidence introduced by Francis in support of his claim, which tended to show an implied contract, was that of a colored man, Allie Dawson, who testified that on one occasion Mrs. Corbin was paying him for work and Francis "stuck out his hand and said that he had also been working and she owed him, and Mrs. Corbin replied that she owed him and would pay him in a few days." The chancellor in upholding the disallowance of these claims remarked that his special commissioner was well acquainted with all the parties, as well as the circumstances, and had disallowed the claims, and upon consideration of the proof found himself in complete agreement. He also said that the two claimants undertook mainly to establish their respective claims by "their own and the testimony of each other, to which exceptions had been filed. Insofar as the exceptions go to the testimony of each for himself they are sustained." The chancellor added, "But of course, in passing on the claims I necessarily take into account the fact that each is testifying against the estate and are vitally interested, the one for the other."

In brief for appellants, counsel concedes that the testimony of Francis in respect of transactions with his mother is incompetent, Section 606, Civil Code of Practice, likewise is the testimony of Zach on his claim. We shall consider the two claims in the light of what the lower court appeared to hold, that each might competently testify for the other, at the same time having in mind the fact that they were co-executors testifying against the estate. As to Francis' claim for $6,150, Zach said "she told me that if he would stay there and help pay for the place she would see that he got his money back; if she ever paid him I didn't know it." At another point he said his mother told Francis, "If you will stay here and pay for it when I am gone the place is yours."

We find in appellants' brief no more than the suggestion that Francis' claim was abundantly proven by Zach, and a number of parties who worked on the farm, and for which work Francis paid them. The testimony of these witnesses went only to the point of showing that Francis and Zach sometimes paid them, none testifying as to any transaction between Francis and his mother, except Dawson, as above stated.

Counsel for appellees take the position that the testimony of Zach for Francis and vice versa was incompetent and should have been excluded both as to Francis' claim for recoupment on the land deal, and claim for labor performed, etc., and as to Zach's claim, on the theory that one party who is estopped from testifying for himself, cannot testify in favor of a co-party where their interests are so connected that both must succeed or fall together. Hopper v. McBurney, 293 Ky. 31, 168 S. W. 2d 374. We do not consider it necessary to pass on this question.

The land which is the subject of the claim of Francis for $6,150 was bought from Tom Corbin and deeded to Zach and his mother; Zach said that his mother paid him for it. He had never heard of any agreement for Mrs. Corbin to pay Francis, or that the land at her death should be his, or that he had at any time heard Francis or Zach say anything about the mother owing either of them.

The proof shows that in February 1941 all the children, save Tom, met in an attorney's office and signed an agreement whereby Francis and Zach were to make the other children "equal heirs in the division of the estate of their mother, except as to the Allie and Zach Corbin tracts." Nothing was said about claims. The proof shows that when the attorney drew up claims notice to put in the paper, Zach and Francis said there was "no use to put it in; she didn't owe nobody anything." It was also shown that when the four met to divide the land, and again the personal property, Francis said his mother didn't owe anything. These statements do not appear to have been denied. This would lead strongly to the assumption that this claim and the others were afterthoughts, or as denominated by the commissioner "counter-irritants."

The general rule is that where the alleged expressed contract is oral the evidence to support it must be clear and convincing. There must be shown the relation of debtor and creditor, and a promise to perform. Here the only possibly competent evidence is that of Zach, and it is not of that character which could be classed as impressive. Courts are not inclined to give the same weight to the evidence of interested witnesses as is ordinarily given to those disinterested. Such must be

clear and positive in order to be accepted as conclusive. Haffler v. McKinney, 288 Ky. 782, 57 S. W. 2d 92; Bullock v. Gay, 296 Ky. 489, 177 S. W. 2d 883. Testimony of "family" witnesses is not given the same credit as that of strangers. Hodges v. Daviess County, 285 Ky. 508, 148 S. W. 2d 697. One fact or circumstance stands out; this farm was bought from Tom long prior to the mother's death, and insofar as the record shows no member of the family (save Zach), or any other person, ever heard of any claim until after the suit for settlement was filed.

The claims of Zach and Francis for services rendered, labor performed and money paid apparently rest on implied contracts. Each testified for himself and the other on these accounts, and introduced evidence which merely showed certain labor performed and payments made, sometimes by Zach; sometimes by Francis and just as frequently by Mrs. Corbin, and it is upon this character of proof that each is insisting that he is entitled to recover. We have extended the rule to be that where one performs labor or renders services for another with his assent and under circumstances which ordinarily call for payment, there is a presumption that the one benefited intended payment, but where there was duty or moral obligation, natural affection or mutuality of benefit, the presumption is that the services were gratuitous and there can be no recovery under the implied contract doctrine. Nicely v. Howard, 195 Ky. 327, 242 S. W. 602, quoted in Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S. W. 2d 459; Stacy's Adm'r v. Stacy, 296 Ky. 619, 178 S. W. 2d 42.

It does not appear that Mrs. Corbin was in such a state of health that she required attention from appellants. The record shows that in maintaining her household, and looking after the properties she did her share, as did the two sons, chiefly Francis. As we survey the record we cannot escape the conclusion that the long time method and manner of living together was solely for the mutual benefit of all, hence no implied contract arises to pay for alleged services. Dawson v. Smith, 197 Ky. 342, 247 S. W. 19; Oliver v. Gardner, 192 Ky. 89, 232 S. W. 418. Even if both appellants are basing their claims for services, etc., on an express contract, the proof is far short of establishing an enforceable agreement.

We would go far afield to fail to uphold the findings of the commissioner and the chancellor. The rule is that where the two concur in findings of fact, we will not upset the judgment unless we conceive it to be contrary to the weight of evidence; nor would we reverse even though we entertained a doubt as to correctness. Chenault v. Southern Trust Co., 245 Ky. 305, 53 S. W. 2d 369; Blackburn's Adm'x v. Union B. & T. Co., 269 Ky. 699, 108 S. W. 2d 806. We entertain no doubt. There is no valid reason for discussing the question as to whether the trust was a dry or active one.

Judgment affirmed both on appeal and cross appeal.