# Sword et al. v. Moore's Adm'r.

December 10, 1946.

E. J. Picklesimer for appellants.

P. B. Stratton for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appellants, plaintiffs below, sought to recover of Moore's estate $1125 for care, support, and services alleged to have been rendered deceased during the last five years of his life. Following introduction of witnesses for plaintiffs, a jury following instruction by the court found for appellee, and judgment was so entered. It is contended, first that the court erred in rejecting competent testimony offered by appellant; second, the court should not have peremptorily instructed the jury to find for appellee.

There is no merit in the first contention. As we observe the record we find that plaintiff Noah Sword offered himself as a witness, not, as far as the record

shows, as a witness for his co-plaintiff, his wife. We have examined his testimony, as far as it went, and find that there were objections to some five or six questions and answers, properly sustained by the court under the provisions of Civil Code, Sec. 606. Examination of all the evidence shows that the court was liberal toward appellants in his rulings on other objections. There was no substantial error in his adverse rulings.

In their petition it was alleged that they were not related to deceased; that some time in 1937 Elmer Moore, unmarried and an only son, was on his way from Van Lear to the bedside of his father. The young man was severely injured in an automobile accident, and was badly crippled, and thereafter was in such condition that he required assistance and care. For their cause appellants alleged that at the special request of friends and neighbors they went to his home and took care of him; that he was confined to his bed for three or four months, during which time he was in such condition that he could not contract for himself. Thereafter when he had sufficiently recovered to appreciate his condition, at his solicitation they remained in the home and cared for him, and that deceased agreed to compensate them for their services, and on many occasions promised to pay them for their services, which they say justified a payment of the sum named. Specified were, "the preparing of meals, doing his washing, and giving him constant care, and such work as was necessary to be done about the place, such as raising crops, garden and other work."

Answer and counterclaim developed the following situation: After a denial of all allegations of the petition it was alleged that Noah Sword, when about nine years of age, came to the home of John Moore and his wife, parents of Elmer, and lived there as a member of the family; the parents cared for him; provided for him as if he were their own child, sending him to school. This relationship, which was that of foster parents and child, continued until the death of Mrs. Moore, which we gather was in 1939. After her death he continued to live in the home until the death of the son. After the death of one or both of the parents, Noah married and brought his wife to the home, and later a baby was born and all continued to live on the place which Elmer, an only child,

had inherited. It was alleged that Elmer had supported Noah and his family, furnishing food, clothing and money. The pleading is sufficient to show that the situation was a living together of these parties for their mutual benefit.

The counterclaim was for certain farm implements, live stock and household articles which it is charged Sword converted to his use. It was alleged that following Elmer's death Sword continued to hold possession of the place, and the heirs of deceased had to resort to court for possession. They asked for rental and the costs of the detainer proceedings.

When it came to proof, Sword testified, and introduced as if on cross, the administrator and his mother and a neighbor. There was a total failure to prove any express contract, as there was failure to prove that at any time during the period Elmer had ever said anything which could be construed as a promise to pay, or that appellants expected to be paid for their alleged services. The most that can be gained from the proof is that Noah furnished some of the groceries, and attended to the raising of crops on the small place of about seven or eight acres. The only allegation of services which could possibly be enlarged into unusual, extraordinary or menial services, was that Mrs. Sword did the cooking and housework, and sometimes washed Elmer's clothing, which he sometimes soiled, and that both sometimes assisted him in walking, or in helping him on the train when he would visit Pikeville, and looking after him on these visits, which were not shown to have been more than casual. The record does not show that Elmer was totally helpless, as it is shown that he worked and "piddled around some," and we gather that he was not at all dependent financially.

Appellant, of course, does not contend that there was an express agreement, or that anything was said by deceased which could be construed as a promise to pay or which would tend to show that appellants expected pay. It is suggested by witnesses that at one time appellants wanted to leave the home, Elmer insisting on their staying, which no doubt met with willing response. Before proceeding further, we should say that the record does not contain a denial of administrator's answer and

there was not a witness who testified as to the value of the alleged services.

Appellants argue that since there was no kinship, even though the parties were living together for their mutual benefit, if they performed extraordinary or menial services for deceased, such as working and mending clothing, working on the farm and similar services, the law implies a contract, and the burden is on defendant to prove that such services were performed as a gratuity. Citing Frailey's Adm'r v. Thompson, 49 S. W. 13, 20 Ky. Law Rep. 1179; Mitchell v. Mitchell's Adm'r, 204 Ky. 745, 746, 265 S. W. 301; Humble v. Humble, 152 Ky. 160, 163, 153 S. W. 249. The only point favorable to appellant in the first case is that the court classified services "such as washing and making or mending clothing," as other than personal services. The other cases cited are more favorable to appellee's position.

The court, no doubt on the evidence introduced, concluded that here there was a moral obligation, and that the parties were living together for a mutual benefit. Both these situations were sufficiently shown to apply the rule announced in many of our cases. The general rule is that to constitute a contract by inference from conduct of parties, there must be a manifestation of assent arising wholly or in part from acts other than words, and where one performs labor or renders services for another with his knowledge or assent, and under such circumstances as call for payment, there is a presumption that the beneficiary intended payment. Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S. W. 2d 459; Israel's Adm'r v. Rice, 295 Ky. 360, 361, 174 S. W. 2d 517. Wherever there is a duty, moral obligation, natural affection, mutuality of benefit in performance of services to another with his knowledge, the presumption is that the rendition was gratuitous. Kellum case, supra; Corbin's Ex'r v. Corbin, 302 Ky. 208, 194 S. W. 2d 65; Nicely v. Howard, 195 Ky. 327, 242 S. W. 602.

While there did not exist a kinship there was a relationship which in good conscience would have justified appellants in rendering voluntarily the meager services mildly claimed to have been extraordinary or menial, without hope of reward. The parents of deceased had, for some reason not developed, taken Noah Sword into

their home, to all intents and purposes as a foster son and foster brother to deceased. When the parents died he later, with his wife, continued to use the home place as his own, during all these times without cost or accounting. It may be readily assumed that because of the former relationship, appellant Noah Sword refused to surrender possession, and the refusal to surrender possession, and the court action to obtain possession might well have been the moving cause of the suit, which was not filed until more than two years after the death of Elmer Moore. All these facts and circumstances no doubt had a bearing on the court when giving peremptory instruction for defendant.

It is noted that plaintiffs plead that for a while after Elmer's accident he was of such state of mind that he was incapable of contracting. There is no proof which would lend the court to such a conclusion, even for the limited period. The proof fails to establish rendition of extraordinary or menial services, or their value if rendered; taken as a whole it established the fact that there was no sort of agreement to pay, or expectancy of pay; the court under all the proof was justified in concluding the alleged services were rendered gratuitously, and correctly directed a verdict for defendant.

Judgment affirmed.