## Simms v. Veach.

February 3, 1948.

Rehearing denied April 23, 1948.

Wilbur Fields for appellant.

John O. Arnold, J. E. Hutchins and Sidney Baer for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Since this action deals primarily with a question of fact, about which the appellant and the appellee present sharply conflicting views, we deem it advisable to quote the Commissioner's report in full. Exceptions to this report were overruled by the chancellor, and his final judgment followed the recommendations of the Commissioner. The appellant's contention that the case should have been remanded to the Commissioner to hear proof relative to what he termed the Commissioner's "speculative conclusions of fact" will be referred to at the conclusion of this opinion.

The report follows:

"This action is brought to reform and enforce as a mortgage, an instrument of writing executed on December 14, 1945 by the plaintiff and defendant purporting to give plaintiff a lien for $3000.00 on property located at the Northwest corner of Adair and First Streets, Louisville, (original filed as defendant's exhibit # 1 with testimony taken July 15, 1946). Defendant's answer and counterclaim pleads a complete failure of consideration for this instrument and asks that it be cancelled.

"Plaintiff is a city detective, and has been for about four years. He also had been a county detective for ten years. Defendant is about 23 years old, and had been in the Army five years until shortly before the occurrences resulting in this action.

"The parties agree that on the morning of December 14, 1945 at about 8 a. m. plaintiff called at defendant's house and picked up the defendant and his mother in his car. He drove them to the place of business of Louis Jarosch, Notary Public, at 3327 Taylor Blvd. Jarosch notarized the purporting mortgage. Later on defendant completed the purchase of the property described in the purported mortgage, at the Louisville Ti-

tle Insurance Company, and a deed conveying the property to him was recorded in the Jefferson County Court House at 10:10 A. M. Except for these facts the plaintiff and defendant differ sharply in their versions of what happened on that morning."

The writing, signed by both parties, and notarized by Jarosch, follows:

"I, Emmett L. Veach, Jr., party of the first part, do hereby give Earl T. Simms, hereafter known as party of the second part, a lien on the following described property:

"Said property located on the northwest corner of First and Adair Street, running one hundred and sixty-eight feet on First Street, and one hundred and twenty-one feet on Adair Street, as described in Deed Book No. 1566, page 75.

"The amount of the lien is $3000.00 said amount to be paid in full on or before July 30, 1946."

"Plaintiff's Story.

"Plaintiff says that on November 21, 1945, he obtained a check for $3,000.00 as a loan from his brother, Clarence Simms, and that he had agreed to loan this sum to defendant to enable him to purchase the property at 1st and Adair. After leaving the office of the Notary, plaintiff says he drove, with defendant and his Mother, to the South Louisville Bank at 4th and Central Aves., arriving there shortly after the bank opened at 9 a. m. He cashed the check (he does not remember the denomination of the bills) and drove down town. It was a wet and slippery day and he took about twenty or twenty-five minutes to reach a parking lot on Armory Place. From there he walked with defendant and his mother to the First National Bank on 5th Street where he gave defendant the $3,000.00 in bills, at the suggestion of Mrs. Veach, to buy a cashier's check. They then went across the street to the Louisville Title Insurance Company, where defendant closed the deal for the purchase of the property at 1st and Adair.

"Defendant's Story.

"Defendant says that after his return from the Army he had talked with plaintiff on numerous occa-

sions about the prospects of their going in business together in the operation of one or more short-order restaurants; that plaintiff had agreed to put up the money to buy a short-order restaurant known as the 'Nickel House' on Preston Street, for about $6,000.00, and that the purported mortgage was given at the plaintiff's insistence to secure defendant's participation as an equal partner in that deal. Defendant's mother had saved from his army allotment and from amounts he had sent home out of his pay about $3640.00 and defendant had brought home $1100.00 additional, with him. These sums were kept by defendant and his mother in the radio in their home, and plaintiff knew about them. In the morning of December 14, when plaintiff called at the house, defendant took $3,000.00 out of the radio and gave it to plaintiff for safe keeping, at plaintiff's suggestion, as he had a gun.

"After leaving the Notary's office on Taylor Blvd., plaintiff drove them toward Louisville on 7th Street, stopping momentarily to look at some lots. Plaintiff handed back the $3,000.00 at a stop light down town and let defendant and his mother off at the Taylor Realty Company, 426 W. Jefferson, arriving there just before 9 a. m. Wm. Brock, the real estate agent, handled the 1st and Adair property, and arrived in a few minutes and took the Veachs to the First National Bank where defendant bought a cashier's check for $3,000.00, and to the Louisville Title Insurance Company, where the deal was closed. Plaintiff did not rejoin them from the time he let them out of his car until they reached the Louisville Title Insurance Co.

"Both sides agree that the Nickel House deal *fee* through about two weeks later. Plaintiff says he then asked for the return of the purported mortgage, but defendant told him: 'let it ride, we would go into another place on the same terms.' Plaintiff says that when he found that the purported mortgage could not be recorded, he had a lawyer draw up a note and mortgage. Plaintiff refused to sign them and this action was instituted.

"Corroborating Evidence.

"Plaintiff's story is, of course, corroborated by the cancelled check. Also, Jarosch, the Notary Public tes-

tified that plaintiff had a check for $3,000.00 which he wanted to turn over to defendant, but defendant said he would. have trouble cashing the check. Jarosch had never seen the Veachs before, but had known the plaintiff for. ten years. Another witness, one James Carducci, testified he saw plaintiff counting out bills to defendant in the First National Bank about 10 or 10:30 a. m. of the morning of December 14.

"Defendant's version of the transaction is supported by his mother. It is also supported by the real estate agent, Wm. Brock, who says the plaintiff and Mrs. Veach were in his office at 9 o'clock, that they went to the First National Bank where defendant counted out $3,000.00 in bills and obtained a· cashier's check; that no one was with them, and he is positive Simms was not present; that they then went to· the Louisville Title Insurance Company, arriving between 9:10 and 9:15 a. m., where the deal was closed. He says the closing was set for 9 a. m.

"F. M. Briggs, closing attorney for the Louisville Title Insurance Co., testified that, to the best of his knowledge he began closing the transaction with Veach about 9:15 a. m.; that it would take at least forty to forty-five minutes to close such a transaction, and that it usually takes the man in the courthouse fifteen to twenty minutes additional to run it down. The deed, as stated above, was recorded at 10:10 A. M.

"Conclusions

"The cancelled check of Clarence Simms to Earl Simms is corroborative only, it could have been cashed later in the day. It is physically possible for plaintiff's version of the facts to be correct, for the check to have been cashed at 9 a. m., for the parties to have arrived at the First National by 9:30 a. m., and the Louisville Title Insurance Company a few minutes later, but to have done so and closed the transaction so as to have the deed recorded at 10:10 a. m., would have required unusual celerity, to say the least. Mr. Briggs, the closing attorney, is not definite as to the time this transaction started, but his testimony as to the usual time required for closing and his best recollection of this deal must be given considerable weight.

"There appears no reason to doubt the real estate agent, Wm. Brock, and if his testimony is correct, the plaintiff's story cannot be possible.

"The testimony of Jarosch about plaintiff exhibiting a check for $3,000.00 does not necessarily conflict with defendant's case. The testimony of Carducci, that he observed plaintiff counting out bills to some third person on this particular morning is entitled to little weight.

"Plaintiff's attorney questioned the ability of defendant to save as much as $3,000.00 out of his army pay and calls his and his mother's testimony about putting the money in their radio a 'fanciful tale that belongs in an Orson Welles radio program.' Your Commissioner does not agree. The defendant seemed straightforward and truthful, though wholly inexperienced in business matters and his testimony about the amount of money he saved is easily possible.

"Recommendation.

"Your Commissioner recommends that plaintiff's petition be dismissed; that the instrument of writing dated December 14, 1945, under which plaintiff claims a lien in the sum of $3,000.00, be cancelled; and that defendant recover his costs herein expended from plaintiff."

At the moment we do not recall a case which presented more sharply conflicting versions of a question of fact, but we are not convinced that we should disturb the chancellor's finding. As pointed out in the recent case of Corbin's Ex'rs v. Corbin, 302 Ky. 208, 194 S. W. 2d 65, our rule is that, where the commissioner and the chancellor concur in findings of fact, we will not upset the judgment unless we conceive the findings to be contrary to the weight of the evidence.

There were some irregularities and some confusion relating to the entry of the judgment, but both parties seem to have been given a full hearing on the issue. After the entry of the final judgment, new counsel for the appellant sought to have the case remanded to the commissioner for the taking of further proof. As evidenced by affidavits, this proof related primarily to the time the appellant cashed his brother's $3000.00 check.

and the period of time it would take to drive down town from the South Louisville Branch of the First National Bank. This evidence could have been introduced by the appellant on the original trial, and, furthermore, it was recognized by the commissioner that it was physically possible for the appellant's version of the facts to be correct.

For the reasons given we think the judgment should be and it is affirmed.