**Paul DEATON and John Barton, Appellants,**

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Appellee.**

No. 1998–CA–003137–MR.

Court of Appeals of Kentucky.

April 21, 2000.

John L. Barton for Garlis L. Pruitt Catlettsburg, Kentucky, for Appellants.

Benjamin Lee Kessinger, III, Andrew R. Jacobs, Stites & Harbison Lexington, Kentucky, for Appellee.

BEFORE: GUIDUGLI; JOHNSON, and KNOPF, Judges.

## OPINION

KNOPF, Judge:

Attorneys Paul Deaton and John Barton appeal from the November 4, 1998, summary dismissal of their restitution claim against appellee Connecticut General Life Insurance Company. They maintain that Connecticut General has been unjustly enriched by their efforts on behalf of Grover Murphy, a beneficiary under a Connecticut General disability policy, whom the appellants helped to obtain social security disability benefits, and whose claim·against Connecticut General was thereby reduced. Believing its jurisdiction over this matter to have been pre-empted by the federal Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.,* the trial court dismissed the attorneys' claim. Deaton and Barton insist that their cause of action, which asserts only state-law-based rights, is not pre-empted by ERISA. For the reasons discussed below, we disagree; and affirm the trial court's judgment.

Grover Murphy suffered a disabling work-place injury in 1980. A few months thereafter, Connecticut General, pursuant to an employee benefit plan purchased by Murphy's employer, began paying him disability benefits. The disability policy includes the following co-ordination of benefits provisions:

> The amount of monthly income otherwise payable for any monthly period will be reduced by the amount of all Other Income Benefits (as defined in the section entitled "Definitions") payable for the same monthly period.
>
> . . .
>
> Other Income Benefits include (1) any periodic cash payments provided on account of the Employee's disability: . . . by the Federal Social Security Act.
>
> . . .

For the purposes of items (1) and (2) above, each Employee who is covered under the Federal Social Security Act will be considered to be receiving periodic cash payments under such Act, in an amount equal to the amount he and his dependents would receive were they receiving such payments, unless the Employee submits proof to the Insurance Company [Connecticut General] that such payments have been applied for but are not payable.

At Connecticut General's insistence, Murphy duly applied for Social Security Disability Income (SSDI) benefits. In fact, before the end of 1981, Murphy had applied twice for SSDI and had twice been denied. In 1989, apparently, Connecticut General again urged Murphy to apply for SSDI, and this time, when his claim was initially denied, Connecticut General demanded upon threat of reducing his benefits that he pursue an administrative appeal. At that point Murphy hired appellant Deaton to assist him. Deaton presented Murphy's claim to the administrative law judge, but again the claim failed. Deaton and Murphy thereupon hired appellant Barton to challenge the administrative decision in federal court. That court reversed the decision and remanded the claim to the ALJ for reconsideration. At last, sometime during the summer of 1993, Murphy was awarded SSDI benefits effective as of December 21, 1982.

Murphy's Social Security benefits having thus come into effect, Connecticut General adjusted its payments to Murphy according to the policy's co-ordination of benefits provisions and demanded that Murphy repay the benefits he had received between December 21, 1982, and the commencement of his SSDI award. When Murphy refused to repay those benefits, Connecticut General brought suit in state court. Murphy counterclaimed for an award of attorney fees on equitable grounds. This was in March and April 1996. In July 1997, Deaton and Barton tendered intervening complaints. They demanded restitution from Connecticut General on the ground of *quantum meruit* for the legal services they had provided directly to Murphy and indirectly, they claimed, to Connecticut General. On August 22, 1997, the trial court entered an order in favor of Connecticut General on its claim for repayment of Murphy's benefits plus interest. Resolution of Murphy's counterclaim and Deaton's and Barton's intervening complaints, however, were postponed until November 1998, apparently as a result of Murphy's recourse to bankruptcy. The bankruptcy court determined that the attorney-fee disputes would not bear materially on Murphy's bankruptcy and remanded them to Martin Circuit Court. Thereupon, the circuit court entered the summary judgment from which Deaton and Barton have appealed.

At the outset, we may clear the water slightly by noting that Murphy is not a party to this appeal; his counter-claim for fees has been abandoned. Before us are Deaton's and Barton's complaints only. Although the trial court did not distinguish between Murphy's claim and those of Deaton and Barton, there is a distinction, as we shall try to show below. It is also well to note here that the bankruptcy court's ruling, as we read it, is not dispositive of any of the fee-related issues now before us. That court merely determined that the resolution of Murphy's bankruptcy did not require their disposition.

■ Because this is an appeal from a summary judgment, which by definition involved no finding of disputed fact, this Court's review is *de novo*. CR 56. As did the trial court, we ask whether material facts are in dispute and whether the party moving for judgment is clearly entitled thereto as a matter of law. Under this state's rules of practice, summary judgments are to be granted cautiously; they are appropriate only when it appears impossible for the non-movant to prove facts establishing a right to relief or release, as the case may be. *Steelvest, Inc. v. Scan-*

*steel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991).

On its face, Deaton and Barton's claim[1] is one for restitution under the common law of this Commonwealth. They allege having enriched Connecticut General by their efforts under circumstances in which Connecticut General should have anticipated liability. *See Corbin's Executors v. Corbin,* 302 Ky. 208, 194 S.W.2d 65 (1946) (discussing the elements of a *quantum meruit* claim). Deaton and Barton do not dispute that the insurance policy under which Connecticut General provided disability benefits to Murphy was part of an ERISA-governed employee benefit plan. Nor do they dispute that ERISA pre-empts state laws bearing directly on such plans. They maintain, however, that their relationship to Connecticut General was sufficiently removed from the plan to make ERISA inapplicable. The trial court disagreed. Relying on *Commonwealth Health Corporation v. Croslin,* Ky., 920 S.W.2d 46 (1996), the trial court determined that jurisdiction over this matter was vested solely in federal court. We shall begin our discussion, therefore, with *Croslin.*

In that case, Croslin, the appellee, had been a victim in an automobile accident and had recovered health insurance benefits under her employer's ERISA-governed welfare plan. Both Croslin and the plan sought recovery against the tortfeasor-Croslin for damages and the plan for subrogation. Prior to trial, the plan settled its claim; whereupon, Croslin brought suit against the plan for attorney fees, on the ground that the plan had benefitted in its settlement negotiations from the work of Croslin's attorneys and so should contribute to their fee. On its own motion,

our Supreme Court ordered the claim dismissed. It noted that ERISA contains two sections related to pre-emption and ruled that under one of them, 29 U.S.C. § 1132—ERISA's civil enforcement section—jurisdiction over disputes between a plan and its beneficiaries has been delegated to federal court. Connecticut General maintains, and the trial court held, that the same rationale applies here: Deaton and Barton's claim for fees is indistinguishable from Murphy's, and Murphy's claim for fees is barred by ERISA. We are persuaded, however, that Deaton and Barton's claim for fees is not identical with Murphy's.[2]

We agree with the trial court that Murphy's counter-claim for fees was barred by 29 U.S.C. § 1132. That section provides a cause of action and limited remedies for those persons and institutions bound by the plan (for example, employer participants, plan fiduciaries, and employee beneficiaries) for injuries arising directly from the plan or its administration. As our Supreme Court observed in *Croslin,* this section has been held to pre-empt completely any overlapping state cause of action. *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Murphy's claim for fees, as was Croslin's, is clearly within this field reserved for federal jurisdiction. Deaton and Barton, however, are not bound by the plan, and they assert their claim, not through Murphy pursuant to a fee-shifting rule or otherwise, but directly in their own right under the doctrine of *quantum meruit.* Their claim is thus unlike the claim at issue in *Croslin* and is outside the field of complete federal pre-emption created by § 1132.

1. Because Deaton's and Barton's claims are virtually identical, we shall, for convenience, refer to them in the singular.

2. Deaton and Barton make this point and rely on *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), for the proposition that outside § 1132 state and federal jurisdiction is concurrent. As discussed in the body of our opinion below, we believe that this is an inaccurate statement of the law. For a good discussion of *Franchise Tax Board* and its relationship to the issues of this case see *Rice v. Panchal,* 65 F.3d 637 (7th Cir. 1995).

■ This does not mean, however, that Deaton and Barton's claim may go forward. As our Supreme Court observed in *Croslin*, ERISA contains two pre-emption provisions. In addition to § 1132, 29 U.S.C. § 1144 provides that, with exceptions not pertinent here, ERISA "supersedes any and all State laws insofar as they may now or hereafter relate to any [covered] employee benefit plan." Because it is conceded that Connecticut General's disability insurance policy is part of a covered employee benefit plan, Deaton and Barton's claim is pre-empted by § 1144 if the state law upon which they base it "relates to" the plan.

Not surprisingly, construction of the phrase "relates to" has proved difficult. In its early ERISA cases, the Supreme Court, attempting to accord the phrase its "plain" meaning, found that Congress intended ERISA pre-emption to be expansive, reaching state laws, including common-law causes of action, that bear upon ERISA plans "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474, 484 (1990) (finding Texas wrongful discharge claim pre-empted); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). More recently, however, the Court has confronted the fact that

> [i]f "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere."

*New York Conference of Blue Cross v. Travelers Insurance Company*, 514 U.S. 645, 655, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695, 705 (1995) (quoting H. James, Roderick Hudson xli (New York ed., World's Classics 1980)).

Accordingly, the Supreme Court and the federal courts of appeals have re-examined ERISA's pre-emption provisions in light of both the statute's purposes and traditional pre-emption doctrine.[3] Fairly typical of these recent attempts to articulate the meaning of § 1144's "relate to" provision is that of the Ninth Circuit:

> The Supreme Court recognized [In *New York Conference of Blue Cross v. Travelers Insurance Company*] at least three areas in which ERISA was intended to preempt state law claims ...:
>
> > First, Congress intended ERISA to preempt state laws that "mandate[ ] employee benefit structures or their administration."
> >
> > . . .
> >
> > Second, Congress intended to preempt state laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.
> >
> > . . .
> >
> > Third, in keeping with the purpose of ERISA's preemption clause, Congress intended to preempt "state laws providing alternate enforcement mechanisms" for employees to obtain ERISA plan benefits.
> >
> > . . . .
> >
> > The key to distinguishing between what ERISA preempts and what it does not lies, we believe, in recognizing that the statute comprehensively regulates certain *relationships:* for instance, the relationship between plan and plan member, between plan and employer, between employer and

---

**3.** *See De Buono v. NYSA–ILA Medical and Clinical Services Fund*, 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997); *California Division of Labor Standards Enforcement v. Dillingham Construction*, 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997); *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *Rice v. Panchal*, 65 F.3d 637 (7 th Cir.1995); *Warner v. Ford Motor Company*, 46 F.3d 531 (6 th Cir.1995).

employee (to the extent an employee benefit plan is involved), and between plan and trustee.

. . .

But ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity—for instance, the relationship between the plan and its own employees, or the plan and its insurers or creditors, or the plan and the landlords from whom it leases office space.

. . . .

. . . [W]here state law claims fall outside the three areas of concern identified in *Travelers*, arise from state laws of general application, do not depend upon ERISA, and do not affect the relationships between the principal ERISA participants; the state law claims are not preempted.

*Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 723–24 (9 th Cir.1997) (citations omitted).[4]

It might at first appear that Deaton and Barton's restitution claim passes this test. *Quantum meruit* is a legal doctrine of general application that is not dependent upon ERISA. Neither does that doctrine mandate or otherwise necessitate ERISA benefit structures or other plan features. Indeed, the appellants' claim asserts a quasi-commercial relationship between themselves and Connecticut General such as might obtain between Connecticut General and its own employees or its own creditors. The last prong of the Ninth Circuit's "relationship test," however (the prong concerned with whether the state law affects the relationship between principal ERISA participants), persuades us that pre-emption is called for in this case. Were Deaton and Barton to prevail on their claim, they would alter, indirectly but significantly, the relationship between Connecticut General as insurer and its disability beneficiaries such as Murphy. Put bluntly, the fees Deaton and Barton seek would substantially burden the enforcement of co-ordination of benefits clauses. Because the relationship between insured and insurer is an integral part of all ERISA disability compensation programs and because co-ordination of benefits provisions are prominent in many if not most of them, we believe that the appellants' claim raises more than an issue of state law. Consequently, ERISA requires Deaton and Barton to address their claim to federal court. For these reasons, we affirm the Martin Circuit Court's November 4, 1998, summary judgment.

ALL CONCUR.

---

4. *See also Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482 (7 th Cir.1996); *Coyne & Delany Co. v. Selman*, 98 F.3d 1457 (4 th Cir. 1996); *Hinterlong v. Baldwin*, 308 Ill.App.3d 441, 241 Ill.Dec. 860, 720 N.E.2d 315 (1999);

*In re Estate of Egelhoff*, 139 Wash.2d 557, 989 P.2d 80 (1999).